CHARLES PARISI, INC. vs. GLOUCESTER MARINE RAILWAYS
CORP.; GLACIER GENERAL ASSURANCE CO., intervener.

Essex.   March 15, 1983. — August 18, 1983.

Present: ARMSTRONG, CUTTER & SMITH, JJ.

Subrogation.   Insurance, Subrogation, Interest.   Interest.

In an action against the owners of a shipyard to recover damages for neg-
ligence in the destruction of the plaintiff's fishing vessel, it was error
for the judge, acting on the basis of an alleged accord and satisfaction
between the plaintiff's insurer and the underwriters for the
defendant's ship repair policy, to allow the defendant's motion to
reduce the judgment entered on the jury's verdict and reduce the in-
terest thereon, where there was neither evidence of an assignment of
subrogation rights from the plaintiff's insurer to the defendant, nor
any suggestion that the plaintiff was a party to the accord and satisfac-
tion or that it operated in any sense for the plaintiff's benefit.
[540-542]

CIVIL ACTION commenced in the Superior Court on May
9, 1975.

The case was tried before James P. Donohue, J.

Robert P. Sullivan for Charles Parisi, Inc.

ARMSTRONG, J.   In February, 1975, the fishing vessel St.
Anthony, which was owned by the plaintiff ("Parisi") and
was in drydock on the premises of the defendant ("Glouces-
ter Marine") for repairs, was damaged by fire so extensively
that it was deemed to be a total loss.   Parisi brought this ac-
tion on May 9, 1975, to recover damages for the negligence
of Gloucester Marine's employees in causing the fire.

Parisi carried hull insurance in the amount of $135,000,
covering damage to the vessel.   That policy was written by
the intervener ("Glacier General") and included a clause
reserving to Glacier General the right to control any litiga-
tion concerning losses of the type covered by the policy.   The
sole loss payee was the United States of America, which had

a mortgage on the vessel in the principal amount of approximately $85,000. On September 3, 1975, Glacier General filed a motion to intervene, alleging, among other things, that the United States was trying to make a claim under the policy, that Parisi was not cooperating in filing proof of loss and subrogation forms, that the damage to the vessel was such as to amount to a constructive total loss, giving it (Glacier General) the right to possession of the vessel, and that Parisi was improperly removing equipment and parts from it. The motion also mentioned that a company by the name of Trans-Atlantic Marine, Inc., was agent for Glacier General in writing the hull policy and was also the agent for other underwriters in writing a ship repair policy held by Gloucester Marine, under which the latter was covered for liability up to $100,000. Glacier General's motion to intervene was allowed.

On March 19, 1976, Parisi and Glacier General resolved their differences by entering into a written agreement under which (1) Glacier General paid out $100,000 under the hull policy, $89,003.60 to the United States as the mortgagee and the balance, $10,996.40, to Parisi;[1] (2) Parisi assigned to Glacier General by way of subrogation its claim against Gloucester Marine to the extent of $100,000; (3) from any recovery by Parisi in its action against Gloucester Marine the first $100,000 "[should] be paid to [Glacier General] under its rights of subrogation, less deductions for expenses of litigation, but excluding counsel fees"; and (4) control of the litigation was reserved to Parisi. The agreement was signed for Glacier General "as underwriter, acting by and through its agent, Trans-Atlantic Marine, Inc.," by one Enos, the president of Trans-Atlantic Marine, Inc.

On January 13, 1982, a jury returned a verdict for Parisi against Gloucester Marine in the amount of $145,000, and a judgment entered for that amount plus interest of $77,462.24. Gloucester Marine then filed a motion to amend the judg-

---

[1] Although the agreement does not mention it, the parties apparently agreed that Parisi was to have the remains of the vessel.

ment to recite damages in the amount of $45,000 and interest of $24,039. The basis of the motion was an alleged accord and satisfaction between Glacier General and the underwriters for Gloucester Marine's ship repair policy, under which Glacier General was credited with $100,000 at the time of the agreement between Parisi and Glacier General. The motion was supported by the testimony of Enos, who stated that the underwriters for the ship repair policy were Glacier General (two thirds) and Lloyds (one third) but did not introduce any documentary evidence of the alleged accord or the bookkeeping credit. As a result it is impossible to draw conclusions as to the exact terms of whatever understanding there may have been between the insurers. The judge allowed the motion, accepting, apparently, the argument of Gloucester Marine that it should not be liable for interest on $100,000 which its insurer had paid in its behalf six years before. A judgment so amended was entered.

Gloucester Marine relied primarily on *Rose & Lucy, Inc.* v. *F/V Saint Anna Maria,* 284 F. Supp. 141 (D. Mass. 1968), as precedent for its motion. In that case the underwriters of the Rose and Lucy hull policy were the underwriters also of the Saint Anna Maria's liability policy, and, having paid the Rose and Lucy's owners $30,000 under the hull policy, they assigned their claim for subrogation to the Saint Anna Maria. In these circumstances the court allowed a motion by the latter vessel to reduce the damages found against it by the subrogated amount. In the present case, of course, there is no exact identity between the plaintiff's insurer and the underwriters of Gloucester Marine's liability policy and, more important, we have no assignment of subrogation rights from Glacier General to Gloucester Marine. Thus, if the judgment is allowed to stand, there is no obstacle to Glacier General's claiming Parisi's diminished $45,000 recovery by way of subrogation under the March 19, 1976, agreement, less expenses of litigation other than counsel fees, leaving Parisi without the benefit of its recovery of damages in excess of its insurance coverage.

It was emphasized in the *Rose & Lucy* case that, unless the damages were diminished by $30,000, the underwriters would be required to pay out that sum and then resort to litigation to recover it under their right of subrogation. It was held not improper to avoid such circuity of action by means of the assignment. In the present case, there could be no comparable circuity of action, even if the underwriters were the same, because the $100,000 which the shipyard's liability insurers have allegedly already paid out appears to be the maximum benefit available under the ship repair policy, and the additional $45,000 is the sole responsibility of Gloucester Marine.

It is urged by Gloucester Marine that Parisi should not receive interest on the $100,000 paid to it and its mortgagee; but under general principles of subrogation it would seem that interest on the $100,000 portion of the judgment would ordinarily accrue not to the plaintiff but to the underwriter from the date it made payment thereof. *Aetna Ins. Co.* v. *United Fruit Co.*, 304 U.S. 430, 438 (1938). *Neitlich* v. *Amica Mut. Ins. Co.*, 7 Mass. App. Ct. 661, 664 (1979). We express no view whether Glacier General may have waived its right to interest by the March 19, 1976, agreement. Glacier General has not advanced its subrogation claim in this litigation, and the question has not been argued. If however, Parisi is ultimately to receive more interest than it would otherwise have been entitled to, it is by virtue of an agreement which cast upon Parisi all expenses for counsel fees and to which Gloucester Marine was a stranger.

Ordinarily a claim of satisfaction (here, partial satisfaction) raises a question of fact which, unless conceded, must be tried to the jury as the finder of fact. *Murray* v. *Grossman*, 289 Mass. 217, 221 (1935). *Pollock* v. *Art Inst.*, 12 Mass. App. Ct. 919 (1981). Without deciding the points, we assume that Parisi failed to preserve any objection to the question's being determined by a judge on motion after the trial and that the testimony by Enos in support of the motion (though of doubtful admissibility over Parisi's objection) was sufficient in law to warrant a finding that there

had been a $100,000 bookkeeping credit between the under-writers. The precise terms of their understanding and its relationship, if any, to the litigation was, as pointed out earlier, left unexplained. There was, moreover, no suggestion that Parisi was a party to their transaction or that it operated in any sense for Parisi's benefit. Between Parisi and Gloucester Marine the situation was not different from the usual one where a plaintiff seeking to establish a liability in tort has been compensated for his loss by his own insurer under the terms of a policy carried for his own benefit. Unlike its counterpart in the *Rose & Lucy* case, Gloucester Marine is not the assignee of Glacier General's rights of subrogation. It was thus error to allow the motion to reduce the judgment.

The amended judgment is reversed, and a new judgment is to enter in accordance with the jury's verdict.

*So ordered.*