**GLOUCESTER MARINE RAILWAYS CORP., Plaintiff, Appellee,**

v.

**CHARLES PARISI, INC., et al., Defendants, Appellants.**

**John Joseph Taylor and Trans–Atlantic Marine, Inc., Defendants, Appellees.**

**No. 87–1708.**

United States Court of Appeals, First Circuit.

Heard Jan. 5, 1988.

Decided June 2, 1988.

Robert L. Burke with whom Robert P. Sullivan and Callan, Sullivan & Burke, P.C., Lowell, Mass., were on brief, for defendant, appellant Charles Parisi, Inc.

Mary P. Harrington with whom Ronan, Segal & Harrington, Salem, Mass., was on brief, for plaintiff, appellee Gloucester Marine Railways Corp.

Louis M. Rohrberg with whom Mendes & Mount, New York City, was on brief, for plaintiff, appellee John Joseph Taylor.

Leonard Rose, Falmouth, Mass., on brief, for plaintiff, appellee Trans–Atlantic Marine, Inc.

Before CAMPBELL, Chief Judge, ALDRICH and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

A Massachusetts ship repairer brought this action against its insurers and a Massachusetts shipowner, seeking a declaration that a state court tort judgment obtained against it by the shipowner was unenforceable and a declaration that its insurers were responsible for any portion of the judgment found to be outstanding. The ship repairer also sought an injunction preventing the shipowner from enforcing the state court judgment. The district court declared the judgment satisfied and enjoined its further enforcement; the court found no need to reach the claims against the insurers. The shipowner now appeals.

We hold that the Anti–Injunction Act barred the injunction and declaration that the district court granted against the shipowner. We therefore vacate the district court's order and remand with instructions to dismiss the ship repairer's complaint against the shipowner and to consider the claims against the insurers.

## I.

Initially, this case concerned the allocation of responsibility for a judgment obtained by the owner of a fishing vessel against a ship repairer in whose drydock the vessel was damaged by fire. As the case comes before us, however, and notwithstanding the absence of any briefing or discussion below, we discover that it unavoidably involves the application of the Anti–Injunction Act. We therefore review the rather complicated factual and procedural history of the case in summary fashion, adding details only where relevant to the Anti–Injunction Act issue. The facts, insofar as they are relevant to this appeal, are undisputed.

In February of 1975 the fishing vessel St. Anthony, which was owned by Charles Parisi, Inc. (Parisi), was being repaired in drydock on the premises of Gloucester Marine Railways Corp. (Gloucester) when it was damaged extensively by fire. At the time of the fire Parisi carried a $135,000 hull insurance policy on the St. Anthony, obtained through Trans–Atlantic Marine Co. (Trans–Atlantic), a marine insurance broker, and written by Glacier General Assurance Co. (Glacier). Gloucester carried a $100,000 ship repair insurance policy, which it too had obtained through Trans–Atlantic. The policy Trans–Atlantic issued to Gloucester described the actual insurers as "London and American Companies"; unbeknownst to Gloucester at the time, two-thirds of the policy was written by Glacier and one-third by various underwriters at Lloyd's of London. Thus Glacier, acting through Trans–Atlantic, had written both Parisi's entire hull policy and two-thirds of Gloucester's ship repair policy.

In May of 1975 Parisi brought a negligence action against Gloucester in Massachusetts Superior Court, seeking damages for the fire on the St. Anthony. In September of 1975 Glacier, acting in its capacity as Parisi's insurer, moved to intervene, alleging among other things that the hull policy gave it the right to control the litigation and that Parisi was failing to cooperate. In March of 1976 Parisi and Trans–Atlantic (acting on behalf of Glacier) reached an agreement whereby Glacier paid out $100,000 under the hull policy[1] and Parisi assigned to Glacier by way of subrogation $100,000 of its claim against Gloucester. Parisi, however, retained control of the pending action against Gloucester.

In January of 1982 Parisi won a $145,000 jury verdict against Gloucester, and a judgment was entered for that amount, plus prejudgment interest as authorized by

---

1. Glacier paid $89,003.60 directly to the United States of America, which held a mortgage on the St. Anthony, and the remaining $10,996.40 to Parisi. For the sake of simplicity we will hereinafter treat the full $100,000 as having been paid to Parisi.

Mass.Gen.Laws Ann. ch. 231 § 6B (1985). For rather complicated reasons having to do with Glacier's position as an insurer of both Parisi and Gloucester, Gloucester filed and the Superior Court granted a motion to reduce the judgment to $45,000 plus interest.[2] Parisi appealed this reduction to the Massachusetts Appeals Court, which reversed the Superior Court and ordered the judgment reinstated. *Charles Parisi, Inc. v. Gloucester Marine Railways Corp.*, 16 Mass.App.Ct. 538, 453 N.E.2d 459 (1983).

In November of 1985, Gloucester, hoping to improve its chances of getting the judgment reduced once more to $45,000, obtained from Trans–Atlantic (acting as Glacier's agent) an assignment of the $100,000 subrogation claim that Glacier had obtained through its March 1976 agreement with Parisi.[3] Gloucester then filed this action in federal district court. The complaint named four defendants: Parisi, Trans–Atlantic, Glacier, and John Joseph Taylor, the American representative of the Lloyd's underwriters.

In the complaint, Gloucester tendered to Parisi $45,000 plus interest (subject to a setoff not relevant here) and sought to enjoin Parisi from further efforts to enforce its state court judgment for $145,000 plus interest. As the basis for this injunction, Gloucester sought one of three alternative declarations:

(1) that Glacier's assignment to Gloucester of its $100,000 subrogation claim was valid and that Gloucester had then waived that claim; or

(2) that Gloucester's insurers had already paid Glacier $100,000 on account of Glacier's subrogation claim, leaving nothing due Glacier (or whoever might have acquired that claim from Glacier); or

(3) that any amount due on account of the first $100,000 of Parisi's judgment against Gloucester was the responsibility not of Gloucester but of its insurers.

In Gloucester's view, the issuance of declarations (1) or (2) would render the subrogation claim valueless and thus remove any rationale for paying Parisi the first $100,000 of the judgment; the issuance of declaration (3) would establish that if such a $100,000 payment were due, it would not be due from Gloucester. Parisi counterclaimed against Gloucester and Trans–Atlantic, alleging that the assignment constituted a tortious interference with Parisi's contract rights under the subrogation agreement.

The district court dismissed Gloucester's claims against Glacier, as Glacier was by now in receivership and had never properly been served. The court rejected Parisi's argument that the action was barred by the res judicata and collateral estoppel effect of the state court judgment. After a bench trial, the court issued a declaration that the state court judgment had been satisfied and enjoined Parisi from taking further steps to enforce it. The court found no need to reach Gloucester's claims against its insurers[4], and the court dismissed Parisi's counterclaims with prejudice. Parisi now appeals the district court's refusal to give preclusive effect to the state court judgment. Parisi does not appeal the dismissal of its counterclaims.[5]

## II.

■ The Anti–Injunction Act declares:

---

**2.** The specific reasons for the court's action need not detain us here. It suffices to note that the court's concern was to avoid double payment to Parisi of the first $100,000 of the judgment.

**3.** The Massachusetts Appeals Court had indicated that if such an assignment had been made, it would have been inclined to affirm the reduction of the judgment to $45,000. *Parisi*, 16 Mass.App.Ct. at 540–41, 453 N.E.2d 459.

**4.** By "insurers" we mean Trans–Atlantic and John Joseph Taylor. As noted above, Glacier was never properly served in this action, and we do not disturb the district court's dismissal of Gloucester's claims against Glacier.

**5.** We pause to explain Parisi's reason for taking this appeal. The original judgment entered for Parisi was for $145,000 plus interest. Parisi has now received $145,000 but has received interest on only $45,000 of that amount. Parisi pursues this appeal in hopes of recovering the remainder of the judgment, which represents interest on $100,000.

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

28 U.S.C. § 2283 (1982). The Act is not strictly jurisdictional; it merely deprives the federal courts of the power to grant a particular form of equitable relief. *Smith v. Apple*, 264 U.S. 274, 278–79, 44 S.Ct. 311, 312–13, 68 L.Ed. 678 (1924) (construing predecessor to current section 2283); *see* 17 C. Wright, A. Miller & E. Cooper, *Federal Practice & Procedure* § 4222 at 322 & n. 30 (1978) (citing cases). We nevertheless think ourselves obligated to raise this issue, which went unnoticed by the parties or the district court, in order "to forestall the inevitable friction between the state and federal courts that ensues from the injunction of state judicial proceedings by a federal court." *Vendo Co. v. Lektro–Vend Corp.*, 433 U.S. 623, 630, 97 S.Ct. 2881, 2887, 53 L.Ed.2d 1009 (1977) (plurality opinion).

We note at the outset that the Act's use of the term "proceedings" is comprehensive:

> It includes all steps taken or which may be taken in the state court or by its officers from the institution to the close of the final process. . . . It applies alike to action by the court and by its ministerial officers; applies not only to an execution issued on a judgment, but to any proceeding supplemental or ancillary taken with a view to making the suit or judgment effective.

*Hill v. Martin*, 296 U.S. 393, 403, 56 S.Ct. 278, 282–83, 80 L.Ed. 293 (1935) (citations omitted). The Anti–Injunction Act "cannot be evaded by addressing the order to the parties or prohibiting utilization of the results of a completed state proceeding." *Atlantic Coast Line R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 287, 90 S.Ct. 1739, 1743, 26 L.Ed.2d 234 (1970).

■ We turn first to the injunction that the district court granted against Parisi's attempts to enforce its state court judg-ment against Gloucester. That injunction would not appear to fall within any of the three exceptions to the Anti–Injunction Act. No Act of Congress expressly authorized the district court's injunction, nor was the injunction necessary in aid of the court's jurisdiction or to protect or effectuate its judgments. We therefore hold that the Act deprived the district court of the power to issue the injunction against Parisi.

■ A second question is whether the Act also deprived the court of the power to issue declarations in support of this injunction. We have previously noted that the Act by its terms does not prohibit declaratory judgments. *See Puerto Rico Int'l Airlines, Inc. v. Silva Recio*, 520 F.2d 1342, 1344 n. 3 (1st Cir.1975). Nevertheless, we agree that "if a declaratory judgment would have essentially the same effect as an injunction, it should be refused if the injunction would be barred by § 2283." 17 Wright & Miller § 4222 at 316 (citing cases).

Both of the declarations requested by Gloucester—that nothing was due whoever held the subrogated claim for $100,000, or that Gloucester had acquired and waived the right to $100,000 of the judgment against it, thereby extinguishing the judgment to that extent—would have had essentially the same effect as an injunction against enforcing the judgment beyond $45,000. And the declaration actually issued by the district court—that the state court judgment had been satisfied—paralleled even more clearly the effect of the injunction against enforcement of the judgment. These declarations would be useful to Gloucester primarily, if not exclusively, as the basis for seeking an injunction in state court against further enforcement of the judgment. Such an effort would produce the very friction between state and federal courts that the Act is designed to avoid. We therefore conclude that the Act barred the issuance of the declarations.

■ Finally, there is the question of how the Anti–Injunction Act might affect Gloucester's claims against its insurers. As the district court never reached these claims,

and as the parties have not focused on them either in the district court or on appeal, we have some doubt as to their true nature. We have only Gloucester's rather meager, ambiguous complaint to assist us. The complaint alleged that Gloucester's insurers were refusing to make any further payments on the ship repairer policy, and it sought a declaration that

> the obligation to pay any sum [determined to be due to the holder of the subrogation claim on Parisi's judgment] is the sole obligation of the insurer under to ship repairer policy ... and is to be promptly paid by said insurer in accordance with the terms of the said policy.

(R. 16.)

Two readings of the complaint are possible. The complaint could be read as alleging a simple breach of the insurance contract and requesting a declaration that the insurers were obligated to indemnify Gloucester for any payment that Gloucester made or might make in satisfaction of Parisi's judgment. Such a claim would raise no Anti–Injunction Act problems. Alternatively, the complaint could be read as requesting a declaration that Gloucester was under no obligation at all to pay the state court judgment entered against it and that this obligation rested, instead, solely with Gloucester's insurers. Such a claim would involve a direct interference with the enforcement of a state court judgment—interference that the Anti–Injunction Act is meant to prohibit. As the district court never reached these claims, and their nature is unclear, a remand is appropriate so that Gloucester may clarify the claims and the district court may decide whether they fall within the prohibition of the Anti–Injunction Act.[6]

### III.

In sum, as the Act rendered the district court powerless to issue any of the relief that Gloucester requested against Parisi, the complaint against Parisi should have been dismissed for failure to state a claim

---

6. We offer no opinion as to whether any of these claims is barred either by issue or claim

upon which relief could be granted. Fed.R. Civ.P. 12(b)(6). We therefore vacate the district court's judgment and remand with instructions to dismiss Gloucester's claims against Parisi—without prejudice to Gloucester's ability to reassert those claims in state court—and to consider Gloucester's claims against its insurers. Of course, in view of our holding that Gloucester may not proceed upon its claims against Parisi in federal court, Gloucester may wish to take a voluntary dismissal of its claims against its insurers, so that the entire case may be brought in state court.

*Vacated and remanded. No costs.*