NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0541n.06
Filed: June 23, 2005

No. 03-4360

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

CARL S. ANDREANO, TRUSTEE,

    *Plaintiff-Appellant*,

    v.

CITY OF WESTLAKE,

    *Defendant-Appellee*.

On Appeal from the United
States District Court for the
Northern District of Ohio

---

**Before:**    **BOGGS, Chief Judge; CLAY, Circuit Judge; WALTER, District Judge**[*]

    **WALTER, District Judge.**

Plaintiff-Appellant, Carl S. Andreano, in his capacity as trustee of Bretton Woods Park, Inc. (hereinafter "Andreano"), appeals from two orders of the district court. The first order granted summary judgment in favor of defendant, the City of Westlake (hereinafter "the City"), on Andreano's substantive due process claim, brought under 42 U.S.C. § 1983, for relief from certain actions and inactions by the City that Andreano claims have prevented him from developing a parcel of his property in Westlake. The second order dismissed Andreano's substantive due process and equal protection claims, also brought under § 1983, that were based on the City's filing "quick-take" condemnation proceedings with respect to that same parcel of property, despite a state court order requiring the City to grant Andreano planning permission to build on that land.

**I.**

---

[*]The Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

The events giving rise to this action began in 1975, when Bretton Woods Park, Inc. ("Andreano")[**] purchased approximately 100 acres of land ("the Parcel") in the City of Westlake. Three years earlier, in 1972, the Cuyahoga County Board of Commissioners established an extension of Basset-Stearns Road, now commonly known as the Crocker Road Extension ("the Extension"). The Extension was divided into two parts, a northern segment ("the Northern Extension") and a southern segment ("the Southern Extension"). The proposed Southern Extension runs through the Parcel.

The Northern Extension is complete, but no construction has begun on the Southern Extension. The county statute authorizing the Southern Extension required that construction be completed by August 1979. Nonetheless, Westlake officials claim that they still intend to build the Southern Extension if and when they can obtain financial and regulatory cooperation from state and federal authorities. The Southern Extension would link Interstates 90 and 480, provide a direct route to Cleveland Hopkins Airport for residents of several Ohio counties, and decrease the traffic flow in Westlake.

Andreano, aware of the plans to build the Southern Extension, submitted plans for developing part of the Parcel, Bretton Woods I, that eventually included the proposed Extension route. These plans were approved by the City in 1978. In 1984, Andreano submitted plans for Bretton Woods II that accommodated future construction of the Southern Extension. These plans were approved by the City in 1989.

In January 1999, Andreano applied for approval of a development plan for Bretton Woods III ("the Plan") that would occupy the remaining part of the Parcel and leave no room for

---

[**]Although Bretton Woods Park, Inc. performed most of the actions described herein, rather than Andreano, principal and trustee of the company, we will refer to the company's actions as those of Andreano for clarity's sake, given the title of this case.

construction of the Southern Extension. At the time of its submission, the Plan fully complied with Westlake's then-existing minimum lot size ordinance. Five days after submission, however, the City realized that the Plan would interfere with the Southern Extension, and passed a new lot size ordinance ("the Ordinance") in March 1999 that increased the minimum lot size and made the Plan unlawful. After the Ordinance passed, but before it became effective, Andreano offered to sell the City a right of way for the Southern Extension, but received no response.

Westlake's approval process for development plans is set forth in Code Sections 1220.01 - 1220.11. The Code states that development plans shall be submitted to the Department of Planning for review and approval by the Planning Commission ("the Commission"). Code Section 1220.07 gives the Commission sixty days after its first meeting where the Commission considers a proposed plan to either approve the plan (with or without modifications) or disapprove it. The Commission must take into account "the spirit and intent of the Zoning Code, the location of the proposal, the effect on the surrounding properties, and the relationship of the proposal to the Guide Plan." Westlake Code §§ 1220.05, 1220.07. Code Section 1220.01 states that the Code as a whole is intended to, among other things, "regulate and control the location and spacing of buildings on the lot and in relation to the surrounding property so as to carry out the objectives of the Guide Plan," and "guide the future development of the City to bring about the gradual conformity of the land and building uses in accordance with the objectives of the Guide Plan." Code Section 1220.07 specifies that, once the Commission has approved or rejected a development plan, the plan shall be submitted to the Westlake City Council for confirmation or rejection of the Commission's decision.

The Southern Extension is not mentioned in Westlake's 1980 Guide Plan, the last, and seemingly only, Guide Plan officially adopted by the Commission. The Southern Extension is mentioned, however, in a 1990 Guide Plan that was never officially adopted by the Commission.

*See Andreano v. Council of City of Westlake*, No. 79286, 2002 WL 21999, at \*4 (Ohio Ct. App. Jan 3, 2002).

The Commission delayed a vote on the Plan until April 19, 1999, one day after the Ordinance became effective, and decided that it would not recommend the Plan to the Westlake City Council for approval because: (1) subplots in the proposed subdivision did not meet the requirements of the new Ordinance;[***] and (2) chapters 1125 and 1127 of Westlake's Code prohibit approval of a plan that does not incorporate an approved thoroughfare, *i.e.*, the Extension. The Westlake City Council rejected the Plan for the same reasons given by the Commission.

Andreano appealed the City Council's denial of the Plan in the Court of Common Pleas of Cuyahoga County. The Court of Common Pleas held that the City Council was entitled to rely on Code chapters 1125 and 1127 to deny the Plan based on the Extension's inclusion in the 1990 Guide Plan, because, as the Ohio Court of Appeals for the Eighth District held in *K-Mart Corp. v. City of Westlake*, 700 N.E.2d 659, 664 (Ohio Ct. App. 1997), the 1990 Guide Plan "is by reference incorporated into Westlake's zoning law." *See Andreano v. Council of the City of Westlake*, Case No. 385384, Vol. 2556 (Ohio Cuy. C.P. 2001) (Joint Appendix ("J.A."), p. 479). However, the court also held that Westlake had violated the City Code by delaying the approval process to allow for the new Ordinance to come into effect, thereby withholding approval of the Plan for more than 90 days.

Section 1125.06 provides, in pertinent part:

> (b) <u>Land Reserved for Public Use.</u> The City may request, by resolution, that a developer set aside, reserve or offer for sale land for streets, parks, playgrounds or other public uses shown upon a duly approved Thoroughfare Plan, Local Street Plan, Park and Recreation Plan or Guide Plan for a period of ninety days after the application

---

[***]During the following six months, the City approved at least five subdivisions that failed to meet the lot size requirements of the new Ordinance. However, none of the approved subdivisions included land needed for the Southern Extension.

> for approval of a preliminary plan, or for a longer period as may be mutually agreed upon by the City and the developer, to allow the City time to acquire such land.

Section 1134.04 states:

> The Planning Commission may . . . prepare plans of unsubdivided or improperly subdivided areas showing a pattern of future streets and public open spaces. After a public hearing, such plans . . . may be adopted and recorded by the Commission. Thereafter no subdivision may be approved and no street may be accepted or improved unless it conforms substantially to such recorded plan, and no applications for a permit to construct a building shall be issued until such land has been acquired or reserved for street purposes, but such permit may not be withheld for a period exceeding ninety days.

The court reversed the City Council's rejection of the Plan as arbitrary and capricious under Ohio law, and ordered the City Council to proceed with a review of the final plat and engineering drawings (the step in the approval process between approval of a plan and issuance of a permit) in accordance with the lot size ordinance in effect at the time the Plan was submitted.[****]

The City appealed the trial court's decision to the Ohio Court of Appeals for the Eighth District. The Court of Appeals affirmed the judgment in favor of Andreano. The City then appealed to the Supreme Court of Ohio, and sought a stay of the judgment against it. The Supreme Court denied the stay, denied the City's motion to certify the record, and dismissed the appeal.

Despite the state court judgment against it, the City did not review the Plan, but instead filed condemnation proceedings currently pending before the Cuyahoga County Probate Court ("the Condemnation Action"). Meanwhile, Andreano continues to pay taxes and insurance on the undeveloped parcel.

Prior to the City filing the Condemnation Action, Andreano filed an action in the United States District Court for the Northern District of Ohio under 42 U.S.C. § 1983, claiming that the City

---

[****]It is undisputed that the Plan complied with the previous lot size ordinance.

violated his right to substantive due process by denying approval of the Plan ("Count One"). In a Second Supplemental Complaint, filed after the City initiated condemnation proceedings, Andreano brought additional claims under § 1983, alleging a violation of his rights to substantive due process and equal protection, and seeking both monetary damages and injunctive relief ("Count Two").

The parties filed cross motions for summary judgment with regard to Count One. The Magistrate Judge recommended that partial summary judgment be granted in favor of Andreano. The City timely filed an objection to the Magistrate Judge's report and recommendation. The district court rejected the report and recommendation, and granted summary judgment in favor of the City on the ground that Andreano did not have a constitutionally protected property interest in the Plan's approval, a threshold requirement for a substantive due process claim.

With respect to Count Two, the City filed a motion to dismiss Andreano's claim for preliminary injunctive relief, but did not otherwise attack his substantive constitutional claims. The district court granted the City's motion, and dismissed *sua sponte* the underlying claims with prejudice. The district court found that Andreano's equal protection claim failed because he had not alleged the existence of any similarly situated landowners against whom no condemnation proceedings had been filed. The court found that the substantive due process claim failed as a matter of law for the same reason as the due process claim in Count One.

Andreano timely appealed.

## II.

### A.    Standard of Review.

We review the district court's grant of summary judgment de novo. *Sperle v. Michigan Dep't of Corr.*, 297 F.3d 483, 490 (6th Cir. 2002). Summary judgment is proper where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ.

P. 56(c). In considering such a motion, the court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

**B.      Count One - Substantive Due Process Claim for Rejection of the Plan**.

As alleged by Andreano, under Ohio law, the City obtains immediate title and possession of the property described in the condemnation action filed by the City. *See* Second Supplemental Complaint, ¶¶51-54. Based on the City's taking of the Parcel, Count One has become moot. Thus, Count One need not be addressed. However, even if the taking by the City is not complete,[*****] plaintiff's substantive due process claim regarding the City's rejection of Andreano's Plan lacks merit for the reasons stated by the district court.

Substantive due process is "[t]he right not to be subject to 'arbitrary or capricious' action by a state either by legislative or administrative action." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992).[******] Proving a violation of substantive due process requires not only

---

[*****]Article I of the Ohio Constitution provides, in pertinent part, that "[p]rivate property shall ever be held inviolate, but subservient to the public welfare. . . . When taken . . . for the purpose of making or repairing roads which shall be open to the public, without charge, a compensation shall be made to the owner, in money." Art. I, §19, Ohio Const. There is nothing in the record before this Court to indicate that any money has changed hands between the parties for the property at issue. If we assume that the taking is not "complete" until the compensation described above is provided, then Count One is not moot and the analysis stated above applies.

[******]When an action affects a relatively small number of persons as individuals, that action is considered administrative, even when it was taken by a legislative body. *Pearson*, 961 F.2d at 1217.

that the challenged state action was arbitrary and capricious, but also that the plaintiff has a constitutionally protected property or liberty interest. *Silver v. Franklin Township Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992). In the absence of a constitutionally protected interest, arbitrary and capricious conduct will not support a substantive due process claim. *See ibid*.

This Court uses an "entitlement test" to determine whether an alleged property right is protected under the Fourteenth Amendment. Under that test, a protectible property right exists only if a plaintiff has a "legitimate claim of entitlement" or a "justifiable expectation" in the approval of his Plan. *Triomphe Investors v. City of Northwood*, 49 F.3d 198, 202-03 (6th Cir. 1995); *Silver*, 966 F.2d at 1036; *G.M. Eng'rs & Assocs., Inc. v. W. Bloomfield Township*, 922 F.2d 328, 331 (6th Cir. 1990); *but see Pearson*, 961 F.2d at 1218 n.29 ("this circuit has implicitly recognized that mere ownership of property subject to zoning is a property interest sufficient to invoke due process"). We must look to state zoning laws to determine whether a legitimate claim of entitlement or a justifiable expectation exists. *See Silver*, 966 F.2d at 1036 (citing *Bd. of Regents v. Roth*, 408 U.S. 564, 577, 97 S. Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).

A plaintiff lacks a legitimate claim of entitlement or justifiable expectation if a municipality has discretion under its zoning code to deny the plaintiff's land-use application despite the application's compliance with the code's minimum requirements. *Triomphe*, 49 F.3d at 202-03; *Silver*, 966 F.2d at 1036. In *Silver*, *supra*, this Court held that a municipal zoning board retained sufficient discretion to deny a conditional use permit application that fully complied with a zoning statute's minimum requirements where the statute provided that an application could be approved so long as it was "desirable." Similarly, a statute providing that "a special use permit may be granted" afforded the zoning board in *Triomphe* sufficient discretion to deny a special use permit application despite the application's compliance with the statute. *Triomphe*, 49 F.3d at 203.

In Ohio, the right to approval of a land-use proposal is determined by the regulation in existence at the time the application is filed. *Gibson v. City of Oberlin*, 167 N.E.2d 651 (Ohio 1960). "In the enactment of a zoning ordinance, a municipal council may not give retroactive effect to such ordinance so that a property owner is deprived of his right to a building permit in accordance with a zoning ordinance in effect at the time of his application for such permit." *Id.* In the case *sub judice*, it is clear that the City was obligated to review the Plan under the ordinance in effect at the time Andreano submitted the Plan for approval. The issue before this Court then is whether the City retained discretion to deny the Plan even though the Plan complied in all respects with the City's original minimum lot size ordinance.

As noted above, under the City's Code, in addition to the ordinance in effect at the time of the Plan's submission, the City was required to take into account the "Guide Plan" when evaluating the Plan submitted by Andreano. For the reasons stated by the district court before us, this Court finds that the Code incorporates by reference Westlake's uncodified 1990 Guide Plan. Thus, the City had ample discretion to deny Andreano's Plan despite its compliance with the original ordinance on the grounds that it did not provide for the approved Southern Extension.

Although the City's failure to reject the Plan within 90 days violated the Code, and was found to be arbitrary and capricious by the state courts under state law, the City did not thereby, as Andreano asserts, somehow forfeit its discretion to reject the Plan. As aptly stated by the district court, "Westlake's initial discretion to reject the Plan deprived Andreano of a property interest in the Plan's approval, regardless of how unlawful under state law Westlake's dilatory commencement of the Condemnation Action may have been." J.A., p. 159 (citing *RRI Realty Corp. v. Incorporated Village of Southampton*, 870 F.2d 911, 919 (2d Cir. 1989) (holding that a municipal agency did not forfeit its discretion to deny an application for a building permit by failing to act on the permit

within the statutory 30-day period)).

On the other hand, even if, as plaintiff asserts, Andreano did have a protected property interest in the approval of his Plan,*******  the City's actions in denying the Plan on the basis that it did not accommodate the Southern Extension do not rise to the level of arbitrary and capricious conduct under a federal substantive due process analysis.  Merely because the state courts found that the City's rejection of the Plan was arbitrary and capricious under state law does not necessitate the same conclusion under federal law.  *See Pearson*, 961 F.2d at 1222 ("'arbitrary and capricious' in the federal substantive due process context means something far different than in state administrative law").

In *Pearson*, *supra*, this Court determined that to prevail on a substantive due process attack on a state administrative action, "a plaintiff must show that the state administrative agency has been guilty of arbitrary and capricious action in the *strict* sense, meaning that there is no rational basis for the . . . [administrative] decision."  *Id. at 1221* (internal quotations and citations omitted).  This Court further stated that, "In the federal court . . . [t]he administrative action will withstand substantive due process attack unless it is not supportable on any rational basis or is willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case."  *Id.* (internal quotations and citations omitted).  Accordingly, "it is extremely rare for a federal court properly to vitiate the action of a state administrative agency as a violation of substantive due process," and the "vast majority of such attacks may readily be disposed of on summary judgment . . . thus keeping interference by federal courts with local government to a salutary minimum."  *Id.*

_____

*******Andreano asserts that his land was and is zoned R-1F-80.  Code Section 1211.90 states that R-1F-80 is a "permitted use, one family residential district."  A land owner may use his land for a "permitted use" as of right, provided the landowner meets all other requirements.  Meck and Pearlman, *Ohio Planning and Zoning Law*, §9:11 (2004 ed.).

at 1222.

Despite the City's dilatory and deplorable conduct, the City's rejection of the Plan was supported by a rational basis in law, *i.e.*, the Plan did not provide for the Southern Extension in accordance with the 1990 Guide Plan. This Court cannot find the City's conduct to be unsupportable or unreasoned. Thus, plaintiff has failed to meet his burden on summary judgment, and the district court was correct to dismiss Count One.

### C. Count Two.

In the Second Supplemental Complaint, Andreano added a second count to the original Complaint after the City initiated condemnation proceedings against plaintiff. Count Two is also brought under §1983 and alleges that the Condemnation Action violates Andreano's equal protection and substantive due process rights. J.A., pp. 838-46. Andreano sought money damages, a preliminary injunction and an injunction asserting that the Condemnation Action violated state law. In response, the City filed a Motion to Dismiss the claim for preliminary injunctive relief wherein it alleged that the harm Andreano claimed as the rationale for seeking an injunction could be, and would be, compensated by money damages if the condemnation proceedings were successful. J.A., pp. 955-60.

The district court converted the City's Motion to Dismiss into a Motion for Summary Judgment under Rule 56 and held that Andreano's claims failed as a matter of law. J.A., pp. 166-67. The Court declined to exercise pendent jurisdiction over Andreano's state law claims and dismissed Andreano's claim for injunctive relief on state law grounds without prejudice.[********] J.A., p. 167.

---

[********]Although Andreano appeals this aspect of the district court's decision, his argument on this issue is so perfunctory and devoid of developed argumentation as to be deemed waived. *See United States v. Crozier*, 259 F.3d 503, 517 (6th Cir. 2001); *see also* Appellant's Brief, p. 55.

The court dismissed with prejudice all other aspects of Count Two, including the substantive claims underlying the claim for preliminary injunctive relief.

### 1.      Dismissal of Substantive Claims Without Notice of Intent to Dismiss.

As a preliminary matter, Andreano asserts that the district court erred when it dismissed his substantive claims without notifying all parties of its intent to dismiss the complaint and giving Andreano a chance to either amend his complaint or respond to the reasons stated by the district court in a notice of intended *sua sponte* dismissal. *See Tingler v. Marshall*, 716 F.2d 1109, 1112 (6th Cir. 1983) (imposing these requirements, among others, before a civil rights suit can be dismissed).*********

The district court acknowledged *Tingler*'s requirements, but stated that they do not apply when a dismissal order is preceded by a motion to dismiss that included the grounds relied upon by the district court. (J.A. 167 n.1 (citing *Sanford v. Stern*, 980 F.2d 731, 1992 WL 361286 (6th Cir. 1992) (table)).) *Sanford* held that *Tingler* did not apply in a case when the dismissal order "was preceded by an answer and motion to dismiss and a motion for summary judgment which included the grounds relied on by the district court," such that the plaintiff "did not lack notice of these defenses and did not require further discovery to respond." *Sanford*, 1992 WL 361286, at *2.

The district court explained that although the City's motion to dismiss Andreano's Count

---

**********Tingler* was overruled by the Prison Litigation Act, 28 U.S.C. § 1915(e)(2)(B), only insofar as it relates to prisoner suits. The Act imposes a requirement that courts permit prisoners the opportunity to amend their complaint once before dismissal, but then permits dismissal of frivolous complaints without notice. *See McGore v. Wrigglesworth*, 114 F.3d 601, 612 (6th Cir. 1997). *Tingler* phrases its requirements in broad terms relating to all civil rights suits, however, and appeals to principles and authority not restricted to the context of prisoner suits. *See, e.g., Tingler*, 716 F.2d at 1111 ("*sua sponte* dismissals are not in accordance with our traditional adversarial system of justice because they cast the district court in the role of 'a proponent rather than an independent entity.'") (internal citation omitted).

Two claim for preliminary injunctive relief did not include the grounds relied on by the court in dismissing his claims, the City's summary judgment motion relating to Count One did include those grounds. This, the district court found, justified granting summary judgment on grounds other than those contained in the briefs under *Herm v. Stafford*, 663 F.2d 669, 684 (6th Cir. 1991), which held that a district court may grant summary judgment on a theory not considered in the briefs without giving parties an opportunity to respond to the new theory. In addition, the district court stated that the factual assertions and legal arguments contained in the parties' motions concerning Count One were dispositive of the constitutional claims dismissed in Count Two.

The district court's attempt to evade the requirements of *Tingler* fails for two reasons. First, on the notice issue, *Sanford* specifically noted that the plaintiff in that case had received constructive notice of the court's intent to dismiss its claims because motions to dismiss had been filed with regard to the claims that were subsequently dismissed. *See Sanford*, 1992 WL 361286, at *2. Unlike Count One, as to which both parties had fully briefed the issue on summary judgment, and had notice of the possibility that the district court might summarily dismiss the substantive claim at issue, no such motion had been filed regarding the substantive claims in Count Two. Andreano had notice only of the fact that the court might deny his request for preliminary injunctive relief.

Second, the district court's explanation as to why additional briefing was unnecessary is premised on the similarity between the claims in Counts One and Two, and between the bases for the district court's grant of summary judgment as to each Count. In fact, the claims in Count Two differ significantly from the claim in Count One. Andreano added an equal protection claim, and had no opportunity to respond in advance to the district court's *sua sponte* determination that he had failed to allege facts demonstrating that he is similarly situated to other landowners against whom no condemnation proceedings have been filed. Given the opportunity to amend his complaint, he

might have been able to find and include such evidence. Furthermore, Count Two attacks an entirely different action by the City, namely the condemnation proceedings.

The basis for the district court's summary judgment on Count One was that Andreano had no protectible legal interest in developing the Parcel in accordance with the Plan. However, the judgment of the Ohio Court of Common Pleas ordering the City to take steps inevitably leading to the Plan's approval arguably gives Andreano a protectible legal interest in his right to have the Plan approved. The actual, as opposed to the stated, basis for the district court's dismissal of Andreano's substantive due process claim in Count Two, therefore, cannot have been the same as the basis for summary judgment as to Count One. The district court was bound by the requirements laid out in *Tingler*, and was not entitled to dismiss Count Two without giving Andreano the opportunity to either amend his complaint or respond to the reasons for the intended dismissal. The district court erred by dismissing Count Two.

We may nonetheless affirm the dismissal on any alternative grounds properly before us. *Russ' Kwik Car Wash, Inc. v. Marathon Petroleum Co.*, 772 F.2d 214, 216 (6th Cir. 1985). In fact, alternative grounds for dismissal exist with respect to both claims in Count Two.

### 2.      Equal Protection Claim for Filing the Condemnation Action.

Supreme Court cases have recognized successful equal protection claims brought by a "class of one," where the plaintiff alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment. *Village of Willowbrook v. Olech*, 528 U.S. 562, 564, 120 S. Ct. 1073, 1074, 145 L.Ed.2d 1060 (2000). However, the basis of any equal protection claim is that the municipality has treated similarly situated individuals differently. *Silver*, 966 F.2d at 1036. As in *Silver*, *supra*, this Court need not reach the rational basis test because Andreano has failed to demonstrate that there were any

landowners who were similarly situated.

In particular, plaintiff alleges that "[t]he filing of the Condemnation Action was the culmination of a pattern of illegal, arbitrary, capricious and even vindictive acts undertaken by Defendant Westlake against Plaintiff whereby Plaintiff has been intentionally treated differently from other property owners who do not have land through which Westlake hopes to see . . . a limited access County highway." J.A., p. 55. To survive summary judgment on his equal protection claim, Andreano had to point to evidence demonstrating that he is similarly situated to other landowners against whom no condemnation proceedings have been filed. *See Olech*, 528 U.S. at 563-65. As asserted by the City, Andreano does not show he is similarly situated to other landowners because he fails to allege that any other landowners had development plans that would interfere with the Southern Extension. Accordingly, Andreano has not established an equal protection claim.

**3.       Substantive Due Process Claim for Filing Condemnation Action.**

The district court dismissed Andreano's substantive due process claim in Count Two on the same grounds it dismissed Count One: Andreano lacked a constitutionally protected property interest in having the Plan approved, and the City's rejection of the Plan had a rational basis. However, the issue presented by Count Two is whether the City violated plaintiff's substantive due process rights when it filed a quick take condemnation proceeding to acquire the property through which the City intended the Southern Extension to run.

As stated above, the Sixth Circuit uses an "entitlement test" to determine whether an alleged property right is protected under the Fourteenth Amendment. Under that test, a protectible property right exists only if a plaintiff has a "legitimate claim of entitlement" or a "justifiable expectation" in avoiding a condemnation action. *Triomphe*, 49 F.3d at 202-03; *Silver*, 966 F.2d at 1036; *G.M. Eng'rs & Assocs., Inc.*, 922 F.2d at 331; *but see Pearson*, 961 F.2d at 1218 n. 29 ("this circuit has

implicitly recognized that mere ownership of property subject to zoning is a property interest sufficient to invoke due process"). Thus, the more specific issue is whether Andreano had a justifiable expectation that no appropriation action would be filed to acquire the property needed to complete the Extension. The facts before this Court clearly indicate that Andreano could have no such expectation.

In submitting plans for development of Bretton Woods I and II in the 1970s and 1980s, Andreano accommodated future construction of the Extension. One of the grounds for the City's denial of the Plan was that it did not incorporate an approved thoroughfare, *i.e.*, the Extension. Andreano submitted the Plan in 1999 without consideration of the Extension, despite the existence of the unofficial Guide Plan submitted in 1990 that included the Extension. Further, at the time the Plan was submitted, the Ohio Court of Appeals for the Eighth Circuit had already determined that the 1990 Guide Plan was incorporated by reference into the City's zoning law. *See K-Mart Corp. v. City of Westlake*, 700 N.E.2d 659, 664 (Ohio App. 8th Dist. 1997).

Should Andreano have been treated more fairly by the City? Yes. Should the City have accepted Andreano's offer in 1999 to sell a right of way on the undeveloped Parcel? Maybe. Could Andreano have justifiably expected the City not to take his property to ensure that the property would remain undeveloped until the Extension is built? Based on the evidence before the Court, the answer must be "No." Andreano's substantive due process claim must fail as a matter of law as he had no justifiable expectation that the City would not file a condemnation action to acquire the property necessary to construct the Extension.

Even if Andreano had a justifiable expectation, the City's conduct in filing the Condemnation Action had a rational basis – to insure that the property designated for the Extension remained undeveloped. Accordingly, the district court was correct to dismiss Count Two.

## III.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.

**CLAY, Circuit Judge, dissenting.**  The Crocker Road Extension, which is a focal point of this litigation,  remains unfinished thirty-three years after it was first proposed, yet the City continues to point to the illusory goal of completing it as a reason to deny Andreano the use of his land for its permitted purpose.  It does so despite the fact that a county statute required the project to be completed more than twenty-five years ago, and despite the fact that Westlake lacks the requisite financial and regulatory cooperation of state and federal authorities.

Furthermore, the circumstances surrounding Westlake's denial of Andreano's land-use application suggest unfair gamesmanship, at the very least.  After Andreano submitted his application, which complied with Westlake's existing lot size ordinance, Westlake passed a new lot size ordinance and then rejected Andreano's application in part on the basis that it failed to comply with the new ordinance.  Westlake did so despite the fact that Ohio law is clear that retroactive effect may not be given to such an ordinance, when an applicant is in compliance with the ordinance in effect at the time of his application.  *Gibson v. City of Oberlin*, 167 N.E. 2d 651, 654 (Ohio 1960).  Making it clear that Andreano was the specific target of this rather unsubtle maneuvering, Westlake subsequently approved other plans which were also out of compliance with the new ordinance.  After the Ohio Court of Appeals reversed Westlake's denial of Andreano's proposal, Westlake filed a quick-take action to appropriate Andreano's land for use in relation to the unfunded and expired proposal for the Southern Extension.

In short, Westlake's claimed "objective" of completing the Crocker Road Extension remains unrealized more than thirty years after it was first announced, and nothing more than

the pronouncements of Westlake's politicians suggest that it will ever be built. Yet Westlake has persisted in denying Andreano the permitted use of his land. And by merely continuing to proclaim a vague intent to some day complete the Crocker Road Extension, Westlake has now persuaded this Court to endorse its denial of Andreano's constitutionally-protected property rights.

The majority does not even see fit to permit a jury to consider whether Westlake's proclaimed intent to complete the Southern Extension is genuine. It is worth reiterating that this case is before us on appeal from the district court's grant of summary judgment to Westlake. Summary judgment is not appropriate in a case such as this where genuine issues of material fact exist. FED. R. CIV. P. 56(c); *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1436 (6th Cir. 1987); *Buckner v. Kilgore*, 36 F.3d 536, 540 (6th Cir. 1994). In my view, there are clearly disputed facts in this case that require resolution by a jury.

"[C]itizens have a substantive due process right not to be subjected to arbitrary zoning decisions." *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992) (citing *Village of Arlington Heights v. Metropolitan Hous. Dev. Corp*, 429 U.S. 252, 263 (1977)). A threshold requirement in making such a claim is the possession of a property interest affected by the administrative action being challenged. *Oakwood Homeowners Assoc. at Stonecliffe, et al. v. City of Mackinac Island*, No. 99-1139, 2000 WL 1434708, *2 (6th Cir. Sept. 20, 2000) (unpublished) (citing *G.M. Engineers & Assocs., Inc. v. West Bloomfield Township*, 922 F.2d 328, 331 (6th Cir. 1990)). The Supreme Court has explained that the Constitution does not *create* property interests; however, the Fourteenth Amendment protects "legitimate claim[s] of entitlement" related to property. *See Board of Regents v. Roth*, 408 U.S. 564, 577 (1972). In this case, there is at least a

genuine issue of material fact as to whether Andreano has a legitimate claim of entitlement which was violated by Westlake's arbitrary and capricious actions in rejecting his land-use application.

The Ohio Court of Appeals has held that Andreano had a right to use his land for the purpose proposed in his application. *Andreano v. Council of City of Westlake*, 2002 WL 21999, * 4 (Ohio App. Jan. 3, 2002) (unpublished) (the Council "attempted to deny Andreano his *right* to use the remaining acreage in the Parcel") (emphasis added). That holding accords with the Westlake City Code, which affords Andreano the use of his property for its permitted purpose "by right." WESTLAKE, OH CODE § 1205.02. Nonetheless, the majority relies on two opinions of this Court, *Triomphe Investors v. City of Northwood*, 49 F.3d 198 (6th Cir. 1995), and *Silver v. Franklin Township Bd. of Zoning Appeals*, 966 F.2d 1031 (6th Cir. 1992), to conclude that Andreano has no legitimate claim of entitlement in the approval of his plan to develop his property in accord with its permitted use. *Triomphe* and *Silver* stand for the proposition that where a zoning board has discretion to reject a land-use application, the applicant can have no legitimate claim of entitlement, and thus no substantive due process claim. These cases are distinguishable from the instant case in at least two critical respects.

The first important distinction is the *source* of "discretion" relied upon by the Court. In *Triomphe*, the Court pointed to language in the Northwood City Code which noted that a "special use permit *may* be granted," thus indicating that the city had discretion to deny such a permit. 49 F.3d at 203. The Court in *Silver* identified a similarly broad discretionary mandate; in that case, the zoning board could issue a conditional zoning certificate "if it [found] the proposed use *desirable*," after considering the effect of the proposed use on the general vicinity. 966 F.2d at 1036 (emphasis in original). The Court described the relevant zoning resolution as giving the board "broad discretion." *Id.*

In contrast, in this case, the source of Westlake's supposed discretion to reject Andreano's development plan is an uncodified 1990 Guide Plan which the majority finds is incorporated by reference into the City's Code. The majority's argument (adopted from the district court) goes as follows: because Westlake was required to consider the Guide Plan's objectives when electing to approve or reject a development plan, and because the 1990 Guide Plan (which, again, was never formally adopted by Westlake) included the objective of completing the Crocker Road Extension, "the City had ample discretion" to deny Andreano's plan on the ground that it did not accommodate the proposed extension.

"Discretion" to deny a plan *because* it does not accord with the City's Code is quite different than discretion to reject a plan *in spite* of its conformance with a zoning code, which is what occurred in both *Triomphe* and *Silver*. Indeed, the former circumstance does not constitute discretion at all; if Westlake was in fact rejecting Andreano's plan on the ground that was not in compliance with a genuine objective incorporated into its City's Code, that would represent a mandatory basis for rejection.

If Westlake's intention to complete the Crocker Road Extension was undisputed, it could point to that fact as mandating the rejection of Andreano's application and there would be no issue in this case. However, there is at least a genuine issue of material fact as to whether Westlake ever planned to construct the Southern Extension. As noted above, the Extension remains unfinished more than thirty years after it was first proposed and more than twenty-five years after the statute authorizing it expired. If Westlake has no real plans to complete the Extension, then the Guide Plan's nine year-old "objective" was effectively moot. Westlake was also required to consider the "spirit and intent" of the Code. WESTLAKE, OH CODE § 1220.05. A jury could conclude that the "spirit and intent" of the Code did not include the construction of the Southern Extension, and that

Westlake therefore could not reject the plan on that basis.

The second important distinction between *Triomphe* and *Silver* and the instant case is that in both of the prior cases, the applicants sought to use the land for something other than its permitted use. In *Triomphe*, the plaintiff sought to build condominium units on land that was zoned "R-Suburban Residential," which required a "special use permit." 49 F.3d at 199-200. In *Silver*, the "permitted use" of the plaintiff's parcel was for single-family residential dwellings. The plaintiff's proposed use was for "low density planned unit developments," which was considered a "conditionally permitted use" under the zoning code. 966 F.2d at 1031.

In contrast, in this case, Andreano contends that he simply attempted to use his property for its permitted use under the zoning code (not subject to any conditions or "special use" requirements) to construct single family, free-standing dwellings. Westlake has not disputed Andreano's claim in this regard. The holdings of *Silver* and *Triomphe* regarding the discretion to deny applications for "special use" or "conditional" permits are therefore of limited applicability in this case.

There is no evidence that Westlake had discretion to deny Andreano's application even if it conformed with the 1990 Guide Plan and the other requirements of the Code, and there is at least a genuine issue of material fact as to whether the stated basis for denying Andreano's application was valid. Construing the facts in the light most favorable to Andreano, as is required at this stage of the litigation, *see Combs v. Int'l Ins. Co.*, 354 F.3d 568, 576-77 (6th Cir. 2004) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)), the evidence compels a conclusion that Westlake had no basis for denying Andreano's application and that Andreano possessed a legitimate claim of entitlement in the use of his property for its permitted purpose.

Having established, at least for summary judgment purposes, that he has a legitimate claim of entitlement, Andreano must next raise a genuine issue of material fact as to whether the state's

administrative action is "arbitrary and capricious." A state administrative action cannot survive a due process attack if it "'is not supportable on any rational basis' or is 'willful and unreasoning action, without consideration and in disregard of the facts or circumstances of the case.'" *Pearson*, 961 F.2d at 1221 (citations omitted).

The majority points to Westlake's stated desire to accommodate the Crocker Road Extension as a rational basis for denying Andreano's proposal, which would interfere with the still-hypothetical Southern Extension. As just noted, the facts of this case create a genuine issue of material fact as to whether Westlake has any real intention of ever completing the Crocker Road Extension. If a jury concludes that Westlake does not intend to finish the Crocker Road Extension, then Westlake has offered no rational basis for rejecting Andreano's plan. The failure of a development plan to accommodate a road that will never be built does not provide a municipality with a rational basis for rejecting that plan.

Furthermore, the circumstances surrounding this case suggest that Westlake's rejection of Andreano's plan was "willful and unreasoning." Also as noted above, Westlake changed its rules – specifically with respect to lot size – after Andreano had already submitted his application, and then deemed him in violation of the new rules. Westlake did not attempt to retroactively apply its new rules to any other applicants, although there were others whose proposed plans were out of compliance with the new lot size ordinance. These actions suggest a "willful and unreasoning" effort to deny Andreano's application.

For the reasons just discussed, it seems clear that Andreano has raised genuine issues of material fact with respect to his due process claim under Count I of the complaint, and the district court erred in granting summary judgment to Defendants on that count. I therefore dissent from the affirmance of that grant of summary judgment.

I also dissent from the majority's resolution of Count II of Andreano's amended complaint because I am convinced for several reasons that a determination on the merits of this claim should not be reached at this point. In Count II, Andreano alleges that Westlake's condemnation action in state court violates his equal protection and substantive due process rights. Andreano seeks money damages, a preliminary injunction, and an injunction asserting that the condemnation action violated state law.

Our precedent indicates that the proper course of action in this case might be to affirm the denial of injunctive relief solely on the ground that the district court was precluded from granting it by the Anti-Injunction Act, 28 U.S.C. § 2283, and to otherwise remand the claim under Count Two to the district court with instructions that it should retain jurisdiction but abstain from ruling on the claim pending the outcome of the condemnation proceedings in state court. *See Martingale LLC v. City of Louisville*, 361 F.3d 297 (6th Cir. 2004); *Forest Hills Utility Co. v. City of Heath, Ohio*, 539 F.2d 592 (6th Cir. 1976).

This Court has previously invoked the Anti-Injunction Act to hold that it was prohibited from enjoining a state court condemnation proceeding. *See Martingale*, 361 F.3d at 304. The Anti-Injunction Act provides that "a court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The Act thereby creates "an absolute prohibition against enjoining state court proceedings, unless the injunction falls within one of three specifically defined exceptions," which are set forth in the statutory language just quoted. *Atlantic Coast Line R.R. Co. v. Brotherhood of Locomotive Eng'rs*, 398 U.S. 281, 286 (1970).

There is no relevant federal statute authorizing the grant of an injunction in this case. As for

the second exception, which applies "where necessary in aid of jurisdiction," we noted in *Martingale* that this exception has been applied "in only two scenarios: where the case is removed from the state court, and where the federal court acquires in rem or quasi in rem jurisdiction over a case involving real property before the state court does." *Martingale*, 361 F.3d at 302. This case was not removed, and although the claims relate to a property dispute, our jurisdiction in this matter is *in personam*, not *in rem*. Therefore, this exception is likewise unavailable.

Finally, because there has been no prior federal decision relating to Andreano's claims, Andreano cannot show that an injunction is necessary "to protect or effectuate [the federal court's] judgments." *Id.* at 303 (citing 28 U.S.C. § 2283). Thus, the Anti-Injunction Act applies in this case, and settles Andreano's claim for injunctive relief without need to reach the merits of the case. Lest there be any doubt about the propriety of applying the Anti-Injunction Act where the parties have not suggested it, it should be noted that we may consider it even where we do not have the benefit of argument by the parties on the issue. *Id.* at 302 (citing *Gloucester Marine Rys. Corp v. Charles Parisi, Inc.*, 848 F.2d 12, 15 (1st Cir. 1988); *Hickey v. Duffy*, 827 F.2d 234, 243 (7th Cir. 1987)).

With respect to Andreano's remaining claim for money damages stemming from the condemnation action, both the district court and this Court are in error in reaching the merits of the claim. The Supreme Court "has sanctioned a federal court's postponement of the exercise of its jurisdiction in cases presenting a federal constitutional issue which might be mooted or presented in a different posture by a state court determination of pertinent state law." *Allegheny County v. Frank Mashuda Co.* 360 U.S. 185, 189 (1959). Count Two of Andreano's amended complain presents just such a case, and the district court should therefore have abstained from ruling until the conclusion of the state court condemnation proceedings. *See Forest Hills Utility Co. v. City of*

*Heath, Ohio*, 539 F.2d 592 (6th Cir. 1976) (affirming district court's decision to abstain pending the outcome of state court condemnation proceedings).

To conclude: under the rule adopted by the majority today, a plaintiff may be deprived of a constitutionally-protected property right in the use of his property for its permitted purpose, based solely on a municipality's rather dubious assertion that it will one day use that same property for the public benefit. Moreover, the majority holds that the plaintiff is not even entitled to present to a jury the evidence concerning whether the municipality genuinely intends to follow through on its pronounced plans for his land. And in its haste to slam the courthouse door on the plaintiff, the majority oversteps its bounds, unnecessarily reaching the merits of claims that do not require such a resolution. The result defies our precedent and a basic sense of fairness, and I must respectfully dissent.