**NOT RECOMMENDED FOR PUBLICATION**

File Name: 11a0635n.06

No. 10-3524

**FILED**

*Aug 29, 2011*

LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ZISS BROTHERS CONSTRUCTION CO.,
INC.,

      **Plaintiff-Appellant,**

v.

CITY OF INDEPENDENCE, OHIO;
CITY OF INDEPENDENCE, OHIO
PLANNING COMMISSION,

      **Defendants-Appellees.**

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO

_____/

BEFORE:    BOGGS, and CLAY, Circuit Judges; TARNOW, District Judge.[*]

    **CLAY, Circuit Judge.** Plaintiff Ziss Brothers Construction Co. appeals the following orders entered by the district court: (1) an order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing Plaintiff's due process claims against Defendants City of Independence, Ohio, and City of Independence, Ohio Planning Commission; and (2) an order pursuant to Rule 56 of the Federal Rules of Civil Procedure denying Plaintiff's motion for summary judgment, and granting

---

[*]Honorable Arthur J. Tarnow, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

Defendants' motion for summary judgment on Plaintiff's equal protection claim; and (3) an order denying as moot all of the remaining discovery motions pending before the district court.

For the reasons stated below we **AFFIRM** the district court's decisions.

## STATEMENT OF FACTS

### I. Factual Background

Plaintiff Ziss Brothers Construction Co., Inc. is a residential construction company owned by Frank and John Ziss. Defendant City of Independence, Ohio (the "City") is a chartered municipal corporation existing under the laws of the state of Ohio. Defendant City of Independence, Ohio Planning Commission (the "Commission") was created by the City's charter, and possesses several powers and duties under the City's charter, including authority over approving plats for land subdivision.

In March 2005, Plaintiff purchased a 7.05 acre parcel of wooded land in Independence, Ohio (the "Property") that abuts the Cuyahoga Valley National Park, and drains into the Cuyahoga River watershed. Prior to Plaintiff's purchase of the property, the Commission prospectively approved subdivision of the Property into multiple lots. Any future plan to subdivide the property, however, still had to comply with the City Code of the City of Independence, Ohio ("City Code") and required the Commission's further approval prior to development. According to the City Code, plans to subdivide and develop property are subject to a two-step approval process: (1) preliminary plan approval by the Commission; and (2) final plat approval.

Plaintiff prepared a preliminary plan application (the "Preliminary Plan") for submission to the Commission. The Preliminary Plan included the following features: (1) subdivision of the

Property into ten residential lots; (2) a T-turnaround to permit future extension of the proposed road; (3) a single stream traversing the property with a thirty-five foot ravine; (4) plans for variances on six of the proposed lots to permit forty foot front yard setbacks; (5) a retaining wall to support the road providing ingress and egress into the development; and (6) a storm water management plan that proposed using filter strips at the rear of the lots abutting the ravine, and a single water quality pond. Plaintiff also indicated that it wanted to expand this development to an adjacent property which it hoped to buy from a neighboring a Lutheran Church. No concrete negotiations for purchase of the land were underway when Plaintiff submitted its Preliminary Plan for approval.

Pursuant to the relevant zoning ordinances, the Commission was required to notify adjoining property owners of Plaintiff's Preliminary Plan, and conduct public hearings addressing concerns with the Preliminary Plan. The Commission reviewed the Preliminary Plan between December 6, 2005 and June 6, 2005, and held a series of public meetings at which neighbors expressed several concerns, including, among others: the replacement of a cul-de-sac with a T-turnaround; insufficient storm water drainage; erosion issues; the need for front yard setback variances for six of the ten lots; and excessive cutting of trees. Because the property abutted a national park, the Army Corps of Engineers also evaluated the Preliminary Plan, and determined that the Preliminary Plan's storm water management system was inadequate.

In spite of these concerns, Plaintiff neither amended the Preliminary Plan, nor availed itself of th opportunity to adjourn the Commission's vote pending revisions of the Preliminary Plan. On June 6, 2005 the Commission voted to reject the Preliminary Plan.

**II.      Procedural History**

3

Subsequent to the Commission's denial of the Preliminary Plan, Plaintiff filed three lawsuits in state court. On June 29, 2006, Plaintiff commenced an administrative appeal in the Cuyahoga County Court of Common Pleas, challenging that the Commission's decision was arbitrary and capricious, and unsupported by substantial, reliable, and probative evidence. The Court of Common Pleas affirmed the Commission's denial of the Preliminary Plan, as did the intermediate Ohio Court of Appeals. The Ohio Supreme Court declined to review Plaintiff's appeal.

Plaintiff also filed actions seeking a writ of mandamus, and declaratory judgment. However, Plaintiff voluntarily dismissed these two actions.

On December 11, 2007, Plaintiff filed the instant suit pursuant to 42 U.S.C. § 1983 in the district court, alleging substantive and procedural due process, and equal protection violations.

Defendants filed a motion to dismiss, which on September 30, 2008, the district court granted in part, and denied in part. The district court declined to dismiss Plaintiff's equal protection claims, but dismissed Plaintiff's due process claims, holding that Plaintiff failed to allege a cognizable property interest. The district court also denied Plaintiff leave to file an interlocutory appeal of this partial dismissal.

The district court permitted the parties to engage in extensive discovery concerning Plaintiff's equal protection claim. Plaintiff deposed every individual who served on the Commission while the Preliminary Plan was pending, as well as the City Engineer, the City Planner, the Cuyahoga County Soil and Water Conservation District Representative, and the City's expert witness.

Following discovery, the parties cross-moved for summary judgment. In its March 30, 2010 order, the district court granted Defendants' summary judgment motion, and dismissed Plaintiff's

equal protection claim. The district court also simultaneously denied as moot Plaintiff's pending discovery motions.

Plaintiff timely appealed the following: (1) the district court's September 30, 2008 dismissal of Plaintiff's due process claims under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted; (2) the district court's March 30, 2010 order granting Defendants summary judgment on Plaintiff's equal protection claim; and (3) the district court's March 30, 2010 order denying Plaintiff's motions for additional discovery.

## DISCUSSION

### I. Procedural and Substantive Due Process

#### A. Standard of Review

"Whether the district court properly dismissed [a plaintiff's] claims pursuant to Rule 12(b)(6) is a question of law, which we review *de novo*. We may affirm the district court's dismissal of a plaintiff's claims on any grounds, including grounds not relied upon by the district court." *Hensley Mfg., Inc. v. ProPride, Inc.*, 579 F.3d 603, 608-09 (6th Cir. 2009) (internal quotation marks and citations omitted).

#### B. Analysis

##### 1. Stating a Claim Under the Federal Rules of Civil Procedure

"A complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ctr. for Bio-Ethical Reform v. Napolitano*, No. 10-1439, 2011 U.S. App. LEXIS 16002, at *7 (6th Cir. Aug. 4, 2011) (quoting Fed. R. Civ. P. 8(a)(2)). Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions"

or a "formulaic recitation of the elements of a cause of action." *Hensley*, 579 F.3d at 609 (internal quotation marks omitted); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

"In reviewing a motion to dismiss, we construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).

Nevertheless, "a complaint containing a statement of facts that merely creates a suspicion of a legally cognizable right of action is insufficient." *Bishop v. Lucent Tech., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (emphasis omitted). "Rather, to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient to raise a right to relief above the speculative level, and to state a claim for relief that is plausible on its face." *Hensley*, 579 F.3d at 609 (internal quotation marks and citations omitted).

Furthermore,

> the complaint must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory. Conclusory allegations or legal conclusions masquerading as factual allegations will not suffice . . . . The factual allegations must be enough to raise a right to relief above the speculative level; they must state a claim to relief that is plausible on its face.

*Bishop*, 520 F.3d at 519 (internal quotation marks, citations and modifications omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Hensley*, 579 F.3d 609.

### 2.      Elements of a Due Process Claim

The due process clause of the Fourteenth Amendment states that "no . . . State . . . shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend.

XIV, § 1. Courts have interpreted this clause to protect both procedural and substantive due process rights. *See, e.g., Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 572-74 (6th Cir. 2008); *Club Italia Soccer & Sports Org., Inc. v. Charter Twp. of Shelby, Mich.*, 470 F.3d 286, 296-97 (6th Cir. 2006); *Warren v. City of Athens, Ohio*, 411 F.3d 697, 705-10 (6th Cir. 2005); *Wojcik v. City of Romulus*, 257 F.3d 600, 609-11 (6th Cir. 2001).

This Court has explained that both "[p]rocedural and substantive due process claims are examined under a two-part analysis. First, the Court must determine whether the interest at stake is a protected liberty or property interest under the Fourteenth Amendment. Only after identifying . . . a [protected] right do we continue to consider whether the deprivation of that interest contravened the notions of due process" embodied in the Fourteenth Amendment. *Wojcik*, 257 F.3d at 609.

In defining the source of a protected property interest, we have clarified that "[e]ven though individuals often claim property interests under various provisions of the Constitution, such interests are not created by the Constitution." *Id*. "This Court uses an entitlement test to determine whether an alleged property right is protected under the Fourteenth Amendment. Under that test, a protectible [sic] property right exists only if a plaintiff has a legitimate claim of entitlement or a justifiable expectation in the approval of his [p]lan." *Andreano v. City of Westlake*, 136 F. App'x 865, 871 (6th Cir 2005). "[N]or may individuals manufacture a property interest. Unilateral expectations of a property interest are insufficient to trigger due process concerns." *Wojcik*, 257 F.3d at 609.

Instead, protected property interests "'are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law – rules or

understandings that secure certain benefits and that support claims of entitlement to those benefits.'"

*Id.* (quoting *Parratt v. Taylor*, 451 U.S. 527, 529 n.1 (1981)); *see also Club Italia*, 470 F.3d at 297.

In a case challenging denial of a zoning application, this Court "must look [specifically] to state

zoning laws to determine whether a legitimate claim of entitlement or a justifiable expectation

exists." *Andreano*, 136 F. App'x at 871.

"A plaintiff lacks a legitimate claim of entitlement or justifiable expectation if a municipality

has discretion under its zoning code to deny the plaintiff's land-use application despite the

application's compliance with the code's minimum requirements." *Id.*; *see also Triomphe Investors*

*v. City of Northwood*, 49 F.3d 198, 202-03 (6th Cir. 1995); *Silver v. Franklin Twp., Bd. of Zoning*

*Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992). "On the other hand, if state law circumscribed the

discretion of the [zoning b]oard members to such an extent that approval of the particular use was

mandatory once [an applicant] met certain minimal requirements, then a property interest could

exist." *Silver*, 966 F.2d at 1036. In Ohio, "the right to approval of a land-use proposal is determined

by the regulation in existence at the time the application is filed." *Andreano*, 136 F. App'x at 871.

### 3.    Application

In this case, the parties agree that the relevant source of any potential entitlement is City Code

§ 1109.04(c), which states, in relevant part:

> Whenever the Commission has received an application . . . [t]he Commission shall
> thereafter set a date for a public hearing. The Mayor's Secretary shall refer one copy
> [of the preliminary plan] to the Commission's Planning Consultant and one copy to
> the [City] Engineer for review and report with respect to compliance with all relevant
> regulations, standards and criteria . . . . Within three weeks from receiving such a
> preliminary plan, the Planning consultant and [City] Engineer shall provide and
> furnish their reports to the Commission. The Commission shall notify the owners .
> . . of adjoining unsubdivided land and owners of adjoining lots . . . of the time and

place of a public hearing . . . . If the Commission, after an evaluation of the preliminary plan and reports of the Planning Consultant and [City] Engineer, approves the preliminary plan, the Chairman and Secretary . . . shall recommend the plan to Council for its approval. Council shall approve or disapprove the recommendations within sixty days . . . . If the Commission or Council fails to approve the preliminary plan, it shall state in its record the reason or reasons for such disapproval.

To state either a procedural or a substantive due process claim, and avoid dismissal under Federal Rule of Civil Procedure 12(b)(6), Plaintiff must demonstrate that its grievances implicate a property interest created under the City Code. In its complaint, Plaintiff alleges, in relevant part, as follows:

On March 18, 2005, Plaintiff purchased an approximately 7.05 acre parcel of real property located at 8108 Stone Road in the City . . . . The Property is located in the U-1 Zoning District . . . . The Property had been recently previously approved for division by Defendant Planning Commission acting on behalf of Defendant City, stating that it could be subdivided in the future in accordance with the City's Codes . . . . Plaintiff purchased the Property knowing of the commitment of the Defendant Planning Commission to approve a future subdivision which met City Codes . . . . Single-family dwellings are a permitted use in the U-1 Zoning District pursuant to § 1141.02(A) of the Codified Ordinances of the City of Independence.

(R. 1, Compl. ¶¶ 9-13.) In its brief, Plaintiff further argues that its "property interest includes the right to use its property in a manner consistent with the [City] Zoning Code." (Br. of Appellant at 49.) Plaintiff thus alleges that its expectation that the Commission would approve its Preliminary Plan constituted a protected property interest.

In contrast, Defendants assert that Plaintiff had no protected property interest in having its Preliminary Plan approved because "nothing in the City's ordinances guarantees or specifically mandates approval of a preliminary plan application upon the fulfillment of a list of criteria, many

9

of which are subjective in nature." (Br. of Appellees at 41.) Similarly, the district court found that Plaintiff had failed to demonstrate,

> that it was entitled to the Planning Commission's approval of its [Preliminary Plan]. Since Plaintiff does not point to any language in the City Code suggesting that the Planning Commission did not have the discretion to deny Plaintiff's [Preliminary Plan] and that Plaintiff was instead entitled to approval, Plaintiff faile[d] to state a procedural or substantive due process claim.

(R. 55, Order 9/30/08 at 9.)

The relevant portion of the City Code, § 1109.04(c), requires the following when a preliminary plan is submitted: (1) the Commission set a date for a public hearing; (2) the Commission notify adjoining property owners of the time and place of a public hearing; (3) the Planning Consultant and City Engineer review the preliminary plan and report to the Commission regarding the preliminary plan's compliance with all relevant zoning regulations, standards and criteria; (4) if, after evaluating the preliminary plan, the Commission approves the preliminary plan, the preliminary plan should be recommended to the City Council for approval; and (5) if the Commission or Council declines to approve the preliminary plan, it shall state on the record its reasons for denying the plan.

Section 1109.04(c) nowhere guarantees an applicant approval of its preliminary plans. It requires only that the Commission evaluate the preliminary plans with respect to the City Code's requirements, and record its reasoning for denying a preliminary plan approval. The Commission's determination regarding whether a preliminary plan complies with the City Code is thus a discretionary undertaking. As previously discussed, under this Circuit's precedent, discretionary

authority to evaluate the legality of a preliminary plan, such as that possessed by the Commission, does not create a protected property interest.[1] *See Andreano*, 136 F. App'x at 871.

Therefore, Plaintiff does not have a protected property interest to support its procedural and substantive due process claims.

### C.     Summary

Plaintiff does not have a protected property interest in having its Preliminary Plan approved by the Commission; Plaintiff can state neither a procedural due process claim nor a substantive due process claim.

### II.     Equal Protection

### A.     Standard of Review

---

[1]In its brief, Plaintiff attempts to minimize the extent of the Commission's discretion, arguing that Plaintiff's "property interest includes the right to use its property in a manner consistent with the [City] Zoning Code. Ohio statutory law further directs the Planning Commission to approve a plan that complies with local zoning ordinances." (Br. of Appellant at 49.) This aspect of Plaintiff's argument fails in two ways. First, the cases Plaintiff cites are inapposite. For example, in *Gibson v. City of Oberlin*, 167 N.E.2d 651, 652-54 (Ohio 1960), the Ohio Supreme Court held only that a new zoning ordinance cannot affect a pending application; laws in effect at the time the application was submitted govern. In *Zaremba Development Co. v. City of Fairview Park*, 616 N.E.2d 569, 570-71 (Ohio Ct. App. 1992), an Ohio court similarly rejected the applicability of a retroactive zoning law on a pending permit application. *See also Hydraulic Press Brick Co. v. Council of City of Independence*, 475 N.E.2d 144, 145 (Ohio Ct. App. 1984).

Second, in stating that "Ohio statutory law further directs the Planning Commission to approve a plan that complies with local zoning ordinances," (Br. of Appellant at 49), Plaintiff fails to understand that determining whether a preliminary plan complies with the City Code is a discretionary, fact intensive inquiry. The relevant provisions do not provide a list of compliance factors, or direct the Commission's discretion in any other meaningful way. Because the Commission exercises its discretion in determining whether a preliminary plan complies with the City Code, Plaintiff does not have a protected property interest in its preliminary plan's approval. *See Andreano*, 136 F. App'x at 871.

This Court reviews the district court's grant of summary judgment *de novo*. *See Binay v. Bettendorf*, 601 F.3d 640, 646 (6th Cir. 2010). The moving party is entitled to summary judgment if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a material issue of fact. "[A] party seeking summary judgment always bears the initial responsibility of informing the [court] of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks and citations omitted).

**B.    Analysis**

**1.    Preclusion**

As an initial matter, Defendants argue that Plaintiff is "collaterally estopped from arguing that the Planning Commission's decision was not rational" because "the issue of whether the Planning Commission's denial was rational was actually and directly litigated in the [Ohio Court of] Common Pleas . . . and affirmed by the [Ohio] Appellate Court." (Br. of Appellees at 37-38.)

The Constitution's full faith and credit clause, as implemented by the full faith and credit statute, 28 U.S.C. § 1738, requires that "a federal court . . . give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. Of Educ.*, 465 U.S. 75, 81 (1984). Therefore, we look to Ohio law to determine the preclusive weight it must accord the state adjudication of Plaintiff's administrative appeal.

Under Ohio law, "issue preclusion precludes the relitigation of an issue that has been actually and necessarily litigated and determined in a prior action." *McKinley v. City of Mansfield*, 404 F.3d 418, 428 (6th Cir. 2005). "In Ohio, collateral estoppel applies when the fact or issue[:] (1) was actually and directly litigated in the prior action[;] (2) was passed upon and determined by a court of competent jurisdiction[;] and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action." *Daubenmire v. City of Columbus*, 507 F.3d 383, 389 (6th Cir. 2007) (intrenal quotation marks omitted).

Therefore, in this case, we "cannot bar [Plaintiff] from asserting his [equal protection] claim unless the Ohio . . . court considered the identical claim and the court's rejection of the claim was essential [to its] judgment." *McKinley*, 404 F.3d at 428-29. As the district court explained, the Ohio Court of Common Pleas decided the following: "(1) the Planning Commission's denial of Plaintiff's [P]reliminary [Plan] [wa]s not unreasonable; (2) the denial [wa]s supported by the preponderance of substantial, reliable, and probative evidence on the whole record; and (3) the denial was not unconstitutional, illegal, arbitrary or capricious." (R. 99, Order 3/30/10 at 18 (citing *Ziss Bros. Constr.*, CV-06-595230, at 5 (Cuyahoga Cnty. Ct. of Common Pleas Jan. 17, 2008).) On appeal from that decision, the Ohio Court of Appeals,

> affirmed the Court of Common Pleas' decision and determined: (1) the Common Pleas Court did not abuse its discretion when it refused to hold a hearing to permit additional evidence; (2) the [Common Pleas ] Court did not abuse its discretion when it refused to conduct a hearing *de novo* on the issues of constitutionality; and (3) the [Common Pleas]Court did not abuse its discretion when it found that the Planning Commission decision 'was not unreasonable, unconstitutional, illegal, arbitrary or capricious and that it was supported by a preponderance of substantial, reliable and probative evidence on the whole record.

(*Id*. (quoting *Ziss Bros. Constr.*, No. 90993, at 18 (Ohio Ct. App Dec. 24, 2008).)

Applying Ohio preclusion law to a materially indistinguishable case, we held in *Triomphe*, 49 F.3d at 202, "that because the constitutional standard in reviewing zoning decisions is much narrower than the state's review, the question[s] addressed by the two courts [are] not the same." Indeed in this case, the claims litigated in state court are not identical to those on appeal. Whereas the instant litigation tests the narrow question of whether Plaintiff's equal protection rights were violated as a matter of federal constitutional law, the Ohio Courts held that as a matter of state zoning law: (1) the Commission's decision was not "was not unreasonable, unconstitutional, illegal, arbitrary or capricious;" and (2) that the Commission's decision was supported by sufficient evidence. (*See* R. 99, Order 3/30/10 at 18.) Therefore, because the Ohio courts did not "consider[] the identical claim," *McKinley*, 404 F.3d at 429, Plaintiff's equal protection claim is not precluded.

## 2.      Equal Protection

The equal protection clause of the Fourteenth Amendment prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. "[T]his language embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly." *Club Italia*, 470 F.3d at 298 (internal quotations omitted). The Supreme Court has stressed that "the purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether occasioned by express terms of a statute or by its improper execution through duly constituted agents." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

To prevail on an equal protection claim "a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such

disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'" *Ctr. for Bio-Ethical Reform*, 2011 U.S. App. LEXIS 16002, at \*37 (quoting *Club Italia*, 470 F.3d at 299). Moreover, "[w]hen a plaintiff does not allege that the government's actions burden a fundamental right or target a suspect class, the plaintiff is said to proceed on a so-called class of one theory and must prove that the government's actions lacked any rational basis." *Club Italia*, 470 F.3d at 298; *see also Olech*, 528 U.S. at 564. "Where . . . no suspect class or fundamental right is implicated, governmental action subject to equal protection scrutiny under the rational basis test must be sustained if any conceivable basis rationally supports it." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty., Ohio*, 430 F.3d 783, 790 (6th Cir. 2005) (internal emphasis omitted). The parties agree that Plaintiff alleges a class of one equal protection claim that is subject to rational basis review.

"The rational basis test means that courts will not overturn government action unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that the court can only conclude that the government's actions were irrational." *Warren*, 411 F.3d at 710 (internal quotation marks omitted). Government action subject to rational basis review will not "be deemed to lack rational justification simply because it is not made with mathematical nicety or because in practice it results in some inequality." *TriHealth*, 430 F.3d at 790-91 (internal quotation marks omitted).

Because a plaintiff bears the entirety of the burden in demonstrating that the challenged action had no rational basis, the government entity, in this case the City and the Commission, "has no obligation to produce evidence to sustain the rationality of its action; its choice is presumptively

valid and may be based on rational speculation unsupported by evidence or empirical data." *Id*. at 790; *see also Club Italia*, 470 F.3d at 298 ("The burden falls squarely to the plaintiff, who must overcome the presumption of rationality by alleging that the defendant acted in a manner clearly contrary to law.").

To prevail on a class of one equal protection claim, "[a] plaintiff may demonstrate that the government action lacks a rational basis" in one of two ways. *Id*. The plaintiff can either (1) "negat[e] every conceivable basis which might support the government action;" or (2) "demonstrat[e] that the challenged governmental action was motivated by animus or ill-will." *Id*.

In this case, Plaintiff alleges that it was,

> similarly situated to [three other property developers,] JK, Granite and Indexco because these developers submitted preliminary plans to the Planning Commission during a similar time frame for residential developments similar in size to [the Property] and which presented similar issues for the City and its residents including concerns of storm water and drainage, entrance locations, and front-yard setbacks variances.

(Br. of Appellant at 23.) Plaintiff alleges that without any rational bases, Defendants treated Plaintiff differently from the comparators.

Plaintiff is unable to demonstrate that Defendants had no rational basis for treating Plaintiff differently. As explained below, Plaintiff can neither "negat[e] every conceivable basis which might support the government action" nor "demonstrat[e] that the challenged government action was motivated by animus or ill-will." *Id*.

### a. Conceivable Bases Supporting Government Action

Although "[u]nder rational basis review . . . the burden falls entirely to Plaintiff to show there is no rational basis," and "Defendant[s] need not offer any rational basis so long as this Court can

conceive of one," *id*. at 299, Defendants in this case point to several facts in the record that provide a rational basis for their rejection of the Preliminary Plan.

First, Defendants assert as a rational basis that the Preliminary Plan "failed to minimize the detrimental environmental impacts." (Br. of Appellees at 22.) Section 1111.02 of the City Code mandates that

> [l]and developments shall be planned to preserve the topography of the land in order to utilize the natural contours and reduce the amount of grading and minimize destruction of trees, wetlands and natural drainageways. The natural features and other distinctive characteristics of the site shall be integrated into the plan to create functional elements in the neighborhoods.

Preliminary plans thus must take account of: (1) streets and topography; (2) natural drainage, including watercourse acceptance; (3) natural features, including wooded areas, rock outcroppings, and streams; (4) wetlands; and (5) trees. *See id*.

Plaintiff nevertheless dismisses Defendants' environmental concerns as a rational basis, stating that "a developer would never be able to negate that trees will be cut in the development process." (Br. of Appellant at 32.) Moreover, Plaintiff contends that the Preliminary Plan's other potential detrimental environmental impacts are similarly not legitimate concerns for Defendants because Plaintiff,

> suggested moving the inline basin out of the ravine, but the City's storm water consultant did not want to alter land outside the ravine for a detention basin because the ravine was already serving the area as a natural detention basin . . . . [Plaintiff's] engineer also testified that . . . any trees in the ravine favoring moderate to well-drained soils have died. Therefore, the [Preliminary P]lan with the inline detention basin was designed to minimize the destruction of trees.

(*Id*. at 32-33.)

17

Contrary to Plaintiff's assertions, however, the storm water program manager for the Cuyahoga Soil and Water Conservation District, Todd Houser, expressed that he had several concerns about the Preliminary Plan's failure to minimize its environmental impact. Houser explained that he was "concern[ed] . . . with the soils . . . that were in the proposed plan site;" specifically, he was "concerned about a very severe erosion hazard, slippage, and erosion prone soils." (R. 77, Houser Dep. at 8.) He was "also concerned about jurisdictional waters . . . the fact that there [are] known streams on the project site, within the proposed boundary of the development." (*Id*.) His third "concern was about the Ohio EPA General Construction Permit . . . that was required in this particular development." (*Id*.) Houser was also concerned with the Property's "riparian areas," and the need for "riparian setbacks and a conservation easement" based on the City's "Clean Water Act responsibilities." (*Id*.)

Second, Defendants explain that the Commission was "concerned about [Plaintiff's] proposal to use an inline detention method." (Br. of Appellees at 24.) To counter this concern, Plaintiff asserts: (1) that Plaintiff "suggested moving the detention basin out of the ravine, but the City's storm water consultant wanted the basin to remain in the ravine;" and (2) that "a development's storm water management plan [is] . . . addressed at the final plat stage and not the preliminary plan stage." (Br. of Appellant at 33-34.)

However, as Plaintiff acknowledged in Frank Ziss' deposition, the Army Corps of Engineers

> determined that the Department of the Army authorization is required for [Plaintiff's] proposed project . . . and the plans [Plaintiff] submitted entail the placement of the flow control structure in the stream to retain storm water from the proposed ten-lot development. The [Army] Corps prefers to see storm water retention basins located outside of the existing aquatic resources to minimize impact. The installation of the flow control structure would alter the functioning of the stream . . . . [T]his area

currently retains some water during high rainfall events . . . . Please investigate alterative storm water pollution prevention plans for the project that would be located outside [of the] existing aquatic features.

(R. 38, Frank Ziss Dep. at 263-64.)

Third, Defendants contend that Plaintiff's proposed "T-turnaround was not permitted by [the City] Code." (Br. of Appellees at 26.) Defendants explain that

> [w]hile Ordinance 111.04(f) states that T-turnarounds may be allowed when the proposed development abuts undeveloped land and if approved by the engineer, it states that provisions shall be made for the future extension of such streets and utilities to the abutting properties. The record is devoid of any provisions . . . for the future extension of such streets to the abutting properties.

(*Id*.)

Plaintiff contends that the "Commission's concern about the T-turnaround and alleged safety issues has been nothing but a red herring throughout this case. A T-turnaround is permitted by the [City] Code under the circumstances of this case. The Property is adjacent to undeveloped land that [Plaintiff] told the Planning Commission it was seeking to acquire for further development." (Br. of Appellant at 37.)

It is true that Plaintiff hoped to extend its development to the adjacent undeveloped property owned by the neighboring Lutheran church. (R. 38, Frank Ziss Dep. at 135.) However, when Plaintiff expressed that the adjacent "backlands [were] available for future development," Plaintiff meant that they were available if the owner would agree to sell them to Plaintiff. (*Id*.) Plaintiff conceded that there was never an agreement to purchase the adjacent lands to extend the development. (*See id*. at 135-37.)

19

Finally, Defendants assert that Plaintiff's Preliminary Plan "failed to supply all documents or information required by City Ordinances." (Br. of Appellees at 27.) Plaintiff, hoewever, contends that it was under no obligation to submit additional materials to the Commission regarding the Preliminary Plan because according to Plaintiff's understanding the Preliminary Plan complied with the City code, and "[Plaintiff] felt [it] addressed [the Commission's] issues with the Preliminary Plan." (R. 38, Frank Ziss Dep. at 284.)

To nullify any potential rational basis arguments by Defendants, Plaintiff must demonstrate that Defendants' rejection of the Preliminary Plan "is so unrelated to the achievement of any combination of legitimate purposes that the [C]ourt can only conclude that the [Commission's] actions were irrational." *Warren*, 411 F.3d at 710. Plaintiff has failed to carry that burden.

It is clear that Plaintiff disagrees with Defendants' environmental impact assessments. However, a difference of opinion among parties is not sufficient to defeat Defendants' concerns as rational bases for rejecting Plaintiff's Preliminary Plan. As the Supreme Court explained, rational basis review does not permit a court a court to overrule "even improvident decisions" made by a political branch. *FCC v. Beach Commc'n, Inc.*, 508 U.S. 307, 314 (1993). In circumstances subject only to rational basis scrutiny, "judicial intervention is generally unwarranted no matter how unwisely we may think a political branch has acted." *Id.* The "wisdom, fairness and logic of the [Commission's] choice are all matters beyond the purview of our scrutiny." *TriHealth*, 430 F.3d at 791. Plaintiff has thus failed to "negat[e] every conceivable basis which might support the government action." *Club Italia*, 470 F.3d at 298.

### b.     Animus or Ill-Will

Plaintiff can also carry its burden under rational basis review by "demonstrating that the [Commission's] action was motivated by animus or ill-will." *Warren*, 411 F.3d at 711.

Under this Court's precedent, Plaintiff's allegations of animosity towards Plaintiff's Preliminary Plan do not constitute animus sufficient to undermine the Commission's decision on rational basis review. The animus must be directed toward the class alleged. *See Turner v. City of Englewood*, 195 F. App'x 346, 357 (6th Cir. 2006); *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1224 (6th Cir. 1992).

In this case, Plaintiff does not allege any personal, or class of one based animus on the part of the Defendants. Rather, Plaintiff alleges that Defendants' animus was directed towards the Preliminary Plan. Plaintiff asserts that the Commission did not like the Preliminary Plan because "[t]hey were trying to acquire the land to make . . . a public park out of it." (R. 38, Frank Ziss Dep. at 284.) Plaintiff also expressed that its equal protection claim was based on the City's animus towards Plaintiff's plan to "further th[e Preliminary Plan] road into the backlands." (*Id*. at 284.)

Because Plaintiff fails to raise allegations of personal ill-will or animosity, Plaintiff is unable to challenge Defendants' rational basis for rejecting the Preliminary Plan based on animosity or ill-will.

### C. Summary

Plaintiff fails to demonstrate that Defendants did not have a rational basis for rejecting Plaintiff's Preliminary Plan, nor is there any indication of animus or ill-will against Plaintiff on the part of Defendants. Therefore, Plaintiff's equal protection claim is without merit.

### III. Dismissal of Pending Discovery Motions as Moot

### A. Standard of Review

We "review a district court's decisions regarding discovery requests . . . for abuse of discretion. Abuse of discretion is defined as a definite and firm conviction that the trial court committed a clear error of judgment." *United States v. Medtronic, Inc.*, 552 F.3d 503, 510 (6th Cir. 2009) (internal quotation marks omitted).

### B. Analysis

Plaintiff asserts that "[t]he [d]istrict court abused its discretion and, therefore, committed reversible error by failing to rule on the pending discovery motions prior to [Plaintiff] having to submit briefs on summary judgment and by not permitting [Plaintiff] to engage in discovery authorized by [Federal Rules of Civil Procedure] 26(b)(1) and 30." (Br. of Appellant at 53.)

This Court has explained that when a party

> claim[s] that the district court acted prematurely by granting summary judgment before discovery was complete . . . . [I]n order to preserve the argument that the grant of summary judgment was too hasty and precluded necessary discovery, the appellant must have complied with the strictures of Federal Rule of Civil Procedure 56[(d)] under which the district court may defer summary judgment, pending discovery, if the non-movant submits affidavits stating that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition.

*Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1196 (6th Cir. 1995). "In other words, if the appellant has not filed either a Rule 56[] affidavit or a motion that gives the district court a chance to rule on the need for additional discovery, this court will not normally address whether there was adequate time for discovery." *Id.*

Plaintiff in this case failed to make a motion before the district court asserting that it had insufficient opportunity for discovery, and requesting that the district court's decision on the

summary judgment motions be delayed. To the contrary, Plaintiff cross-moved for summary judgment. (*See* R. 82, Pl.'s Mot. For Summ. J.) Therefore, Plaintiff has waived its argument challenging the district court's denial of its additional discovery motions as moot. *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552-53 (6th Cir. 2008).

Even if the argument is not waived, we nevertheless hold that the district court did not abuse its discretion in denying Plaintiff's motions for additional discovery as moot. As previously illustrated, the record in this case contains sufficient evidence for the district court to adjudicate Plaintiff's equal protection claim. Additionally, because the district court dismissed Plaintiff's due process claims for failure to state a claim, Plaintiff was not entitled to discovery on these claims. Moreover, prior to ruling on the cross-motions for summary judgment, the district court permitted the parties to engage in extensive discovery concerning Plaintiff's equal protection claim. Plaintiff deposed every member of the Commission, as well as the City Engineer, the City Planner, the Cuyahoga County Soil and Water Conservation District Representative, and the City's expert witness.

Because the district court afforded Plaintiff ample opportunity to conduct broad discovery, and because Plaintiff cross-moved for summary judgment rather than moving the district court to delay ruling on summary judgment pending additional necessary discovery, the district court did not abuse its discretion in denying Plaintiff's pending discovery motions as moot.

**C.      Summary**

Plaintiff waived its argument challenging the district court's denial of Plaintiff's pending discovery motions as moot. In the alternative, the district court did not abuse its discretion in denying Plaintiff's pending discovery motions as moot.

## CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's decision.