NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name:  19a0068n.06

Case No. 18-1447

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 12, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| JOHANA CABANTAC ARUCAN, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| CAMBRIDGE EAST HEALTHCARE | ) | MICHIGAN |
| CENTER/SAVA SENIORCARE, LLC, et al., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE:  SILER, COOK, and BUSH, Circuit Judges.

**SILER**, Circuit Judge.  Johana Arucan appeals the district court's dismissal of her civil rights claims against: (1) her former employer, Cambridge East Healthcare Center (Cambridge), and former supervisors, Paige Vantiem and Megan Reusser (collectively, Cambridge Defendants); and (2) two officers from the Madison Heights Police Department, John Heinrich and Rick Zamojski (collectively, the Officers).  We AFFIRM.

I.

Arucan began working for Cambridge as a physical therapy assistant in 2012.  In that role, Arucan provided therapy to patients pursuant to a schedule that Cambridge generated each day.

On January 5, 2016, Arucan mistakenly treated a patient who had never been evaluated for and did not need physical therapy.  The mix-up occurred when a physical therapist asked Arucan

to treat Catherine Y.—a patient not on Arucan's schedule. Instead of treating Catherine Y., however, Arucan treated Catherine B.

The next day, Megan Mocny—Arucan's direct supervisor and Cambridge's rehabilitation manager—learned of Arucan's mistake.[1] Mocny told Arucan that her mistake was unacceptable and then reported the incident to Vantiem, Cambridge's head administrator. Arucan signed a handwritten statement explaining her error. While Arucan testified that she did not write the statement (and later that Mocny forced her to write it, she ultimately admitted that she committed a terminable offense when she treated the wrong patient.

On January 8, 2016, Vantiem called Arucan and Mocny into her office and fired Arucan. Vantiem explained that Arucan's mistake was intolerable given that she could have easily verified that she was treating the correct patient and that providing a patient with unnecessary treatment can cause injury.

According to Cambridge Defendants, after Vantiem fired Arucan, Arucan refused to sign termination paperwork or leave the premises.[2] Instead, Arucan exited Vantiem's office, explaining that she was going to treat her patients. Vantiem told Arucan that she would call the police if Arucan did not leave the facility. Arucan reiterated her intention to treat her patients and left the office; Mocny followed her.

Someone called the Madison Heights Police Department, and, within a few minutes, Officers Zamojski and Heinrich (collectively, the Officers) arrived at the facility. Upon the

---

[1] Arucan mentioned to Mocny that "Catherine Y.'s" daughter did not want her to receive treatment, which prompted Mocny to ask Arucan to take her to the room of the patient she had treated the day before. Upon arrival, Mocny realized that Arucan had treated Catherine B.

[2] Arucan testified that she could not recall anything about her meeting in Vantiem's office.

Officers' arrival, Vantiem told the Officers that she wanted Arucan to leave the facility immediately. Then, Vantiem—in Zamojski's presence—asked Arucan to leave, but she refused.

Thereafter, the Officers asked Arucan to leave and warned her that if she did not leave, she would be arrested. Arucan ignored the Officers' warnings.

Ultimately, Heinrich arrested Arucan for trespassing. The Officers subsequently escorted Arucan off Cambridge's property and transported her to the Madison Heights Police Department where she was booked and placed in a holding cell until one of her (former) co-workers bonded her out.

Arucan was charged with trespassing, an offense to which she ultimately pleaded no contest. Pursuant to the plea agreement, Arucan agreed to "release the City, its officers, employees and agents from any claims, damages, or causes of action of any kind that may be associated with the incident resulting in the prosecution of this case." Both Arucan and her attorney signed the agreement and release of liability.

Based on the events that led to and followed her termination, Arucan filed a pro se complaint—which she later amended—against Cambridge, Vantiem, Reusser (one of Arucan's managers), Zamojski, and Heinrich. Though the amended complaint is vague, it appears to contain claims against Cambridge Defendants for discrimination based on race, color, gender, and national origin—and creation of a hostile work environment—in violation of Title VII.[3] Further, Arucan seemingly asserted that the Officers were liable to her pursuant to 42 U.S.C. § 1983 because they violated her Fourth and Fourteenth Amendment rights when they: (1) arrested her without probable cause and (2) subjected her to excessive force during her arrest. Arucan also claimed that the

---

[3] Arucan also alleged that the Cambridge Defendants committed various torts under Michigan law, such as libel, slander, and infliction of emotional distress.

Cambridge Defendants and/or the Officers committed a "flagrant violation to [her] civil and constitutional rights as a woman, a minority and as an [sic] U.S. citizen's employee," which the lower court interpreted as an attempt to allege an Equal Protection violation.

As the case progressed, Arucan sought but was denied counsel on several occasions. She filed two requests for counsel. The magistrate judge denied Arucan's requests, reasoning that—because her claims were "not of an unduly complex nature" and she "ha[d] an adequate understanding of the issues and matters involved in [the] case" and was "able to articulate the claims and arguments in a reasonable fashion"—her case did not present the type of "exceptional circumstances" that warrant appointment of counsel. Later, Arucan twice more requested counsel. The magistrate judge denied the requests, reasoning that she had "offer[ed] no reason[] for the Court to depart from its earlier decision to deny the appointment of counsel."

Soon thereafter, Cambridge Defendants and the Officers moved for and obtained summary judgment as to each of Arucan's claims. The magistrate judge reasoned that Arucan's discrimination claim failed because the undisputed facts: (1) did not show that Cambridge Defendants treated her differently from a similarly situated, non-protected employee; and (2) established that Cambridge Defendants had a legitimate reason for terminating her—namely, she treated the wrong patient. The magistrate judge also concluded that Arucan's hostile work environment claim failed because she offered no evidence supporting it. The magistrate judge then found that the Officers were entitled to qualified immunity because they did not violate Arucan's Fourth Amendment rights. Finally, the magistrate judge reasoned that, if Arucan raised an Equal Protection claim, that claim was implausible.[4]

---

[4] The district court adopted the magistrate's recommendation in full.

II.

Arucan—with assistance of counsel—appeals. She argues (in a relatively unstructured manner) that the lower court abused its discretion when it denied her requests for counsel. She also asserts that the lower court erred in: (1) granting the motions for summary judgment, and (2) dismissing her supposed Equal Protection claim.

We find none of Arucan's arguments persuasive.

A. **The District Court Did Not Abuse its Discretion When it Denied Arucan's Requests for Counsel**

Arucan argues that the district court erred when it denied her requests for counsel. Specifically, she claims that it failed to consider the complexity of her claims and "whether [she] was competent" to prosecute them pro se.

A district court's decision regarding appointment of counsel is reviewed for abuse of discretion and "will be overturned only when the denial of counsel results in 'fundamental unfairness impinging on due process rights.'" *See Reneer v. Sewell*, 975 F.2d 258, 261 (6th Cir. 1992) (citation omitted); *see also* 28 U.S.C. § 1915(e)(1) ("The court may request an attorney to represent any person unable to afford counsel."). In exercising its discretion, the district court considers whether "exceptional circumstances"—such as highly complex issues—warrant appointed counsel. *Lavado v. Keohane*, 992 F.2d 601, 606 (6th Cir. 1993) (citation omitted); *see also Mars v. Hanberry*, 752 F.2d 254, 256 (6th Cir. 1985).

The district court did not abuse its discretion. Arucan's requests for counsel stated only that she would like an attorney and that several attorneys had declined to represent her. Thus, Arucan "did not identify any exceptional circumstances that warranted the appointment of counsel." *See Cleary v. Mukasey*, 307 F. App'x 963, 966 (6th Cir. 2009). Moreover, the district court considered the nature of the case, its complexity, and Arucan's ability to prosecute her claim,

and the record does not suggest that it abused its discretion in denying the requests or that such denials constituted "fundamental unfairness impinging on due process rights." *See Richmond v. Settles*, 450 F. App'x 448, 452-53 (6th Cir. 2011); *see also Lavado*, 992 F.2d at 604-05.

**B.** **Cambridge Defendants' and the Officers are Entitled to Summary Judgment**

Next, Arucan asserts that the district court erred when it granted Cambridge Defendants' and the Officers' motions for summary judgment. This court reviews a grant of summary judgment de novo. *Groening v. Glen Lake Cmty. Sch.*, 884 F.3d 626, 630 (6th Cir. 2018).

**1.** *Cambridge Defendants*

Arucan claims that Cambridge Defendants are not entitled to summary judgment on her Title VII claims. With respect to her disparate treatment claim, she argues that she established a prima facie case of employment discrimination and that Cambridge Defendants' supposed reason for terminating her was pretext for discrimination. She also argues that the record supports her hostile work environment claim.

**a.** **Disparate Treatment**

Title VII prohibits an employer from "discharg[ing] any individual, or otherwise . . . discriminat[ing] against any individual with respect to [her] . . . employment[] because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). An employee may prove Title VII race discrimination with direct or circumstantial evidence. *Johnson v. Kroger Co.*, 319 F.3d 858, 864-65 (6th Cir. 2003). Courts assess claims based on circumstantial evidence— such as the ones in this case—via the burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 791 (1973).

In her complaint, Arucan alleged that she had been discriminated against on the basis of race, color, gender, and national origin.[5]  The district court rejected Arucan's disparate treatment claim, reasoning that: (1) she failed to present a prima facie case of discrimination because she did not establish that Cambridge Defendants treated her differently than a similarly situated employee, and (2) even if Arucan had established a prima facie case, her claim still failed because Cambridge Defendants had a legitimate reason for terminating her (treating the wrong patient), and she offered no evidence suggesting that that reason was pretext.

The district court's analysis is sound.  While Arucan claims in her brief that her "deposition testimony show[s] that she was treated differently than other similarly-situated employees" and that "her job ultimately went to a non-Asian, younger male," she cites no evidence supporting those propositions and a review of the record reveals there is none.  Further, though Arucan argues (without citation to evidence) that she "pointed to facts showing [that] 'other physical therapists who were white or male performed deficiently, received citations, and harmed patients even to the point of causing death, yet were not terminated,'" no such facts exist.  On the other hand, Cambridge Defendants have submitted undisputed evidence establishing that no other employee at Cambridge has ever treated the wrong patient.  Thus, Cambridge has never had an employee who is "similarly-situated" to Arucan, meaning that Cambridge could not have treated such an employee differently.  *Barry v. Noble Metal Processing, Inc.*, 276 F. App'x 477, 483 (6th Cir. 2008) (indicating that two employees are similarly situated if they had the same supervisor, were subject to the same standards, and engaged in conduct that was "similar in kind and severity").

---

[5] Arucan also alleged that she was discriminated against on the basis of age, in violation of the Age Discrimination in Employment Act.  She does not ask us to review the district court's dismissal of that claim.

Further, assuming Arucan has presented a prima facie case for employment discrimination, her claim fails because Cambridge Defendants terminated her for treating the wrong patient and she has failed to show that that reason is pretext for discrimination. To establish that an employer's reason for termination is pretext for discrimination, an employee generally must show that the reason: "(1) has no basis in fact, (2) was not the actual reason, or (3) is insufficient to explain the employer's action." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008) (citation omitted). Arucan, however, admitted that she treated the wrong patient and that doing so constituted terminable conduct, thereby signifying that Cambridge Defendants' reason for terminating her was based in fact and sufficient to explain their actions. Nonetheless, Arucan asserts that her mistake was insufficient to justify termination because Cambridge's employee handbook generally implements a progressive disciplinary process. This argument fails: the handbook states that some mistakes are "serious enough under the circumstances to warrant . . . termination." The district court did not err in granting summary judgment in favor of Cambridge Defendants on Arucan's disparate treatment claim.

### b.   Hostile Work Environment

Title VII also protects an employee from a "workplace . . . permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the [employee's] employment . . . ." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks and citations omitted). "Conduct that is not severe or pervasive enough to create an objectively hostile or abusive work environment—an environment that a reasonable person would find hostile or abusive—is beyond Title VII's purview." *Id.*

The district court rejected Arucan's hostile work environment claim because "she offer[ed] no evidence . . . to support her claim that she was subjected to a hostile work environment, and

there is no record evidence to support such a claim," and we agree with this conclusion. The district court did not err in granting summary judgment on this claim.

### 2. *The Officers*

Next, Arucan challenges the district court's decision granting the Officers summary judgment based on qualified immunity.

Even assuming the district court erred in holding that the Officers were entitled to qualified immunity, her claims against them fail because she waived them. In her plea agreement, Arucan specifically agreed to "release the City, its officers, employees and agents from any claims, damages, or causes of action of any kind that may be associated with the incident resulting in the prosecution of this case." That agreement is enforceable because Arucan entered into it voluntarily, there is no evidence that prosecutorial or police misconduct led to the agreement, and enforcement of the agreement would not adversely affect public policy interests. *See Town of Newton v. Rumery*, 480 U.S. 386, 398 (1987) (holding that plaintiff waived released claims pursuant to plea agreement in similar circumstances).

### C. <u>Arucan Failed to Plausibly Allege an Equal Protection Violation</u>

Finally, Arucan claims that she raised a plausible Equal Protection claim and that, therefore, her claim should not have been dismissed under Federal Rule of Civil Procedure 12(b)(6). In support of her position, Arucan asserts (without additional argument or explanation) that "[a] liberal reading of [her] Complaint articulates a 'class-of-one' claim" pursuant to *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000).

"Whether the district court properly dismissed [a plaintiff's] claims pursuant to Rule 12(b)(6) is a question of law, which we review de novo." *Ziss Bros. Const. Co. v. City of Independence, Ohio*, 439 F. App'x 467, 470 (6th Cir. 2011) (citation and internal quotation marks

omitted). To survive a Rule 12(b)(6) motion to dismiss, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). "Although this standard does not require detailed factual allegations, it does require more than labels and conclusions or a formulaic recitation of the elements of a cause of action." *Ziss Bros.*, 439 F. App'x at 470 (internal quotations marks and citations omitted).

Arucan's argument fails. Neither Arucan's complaint nor appellate brief articulates which defendant—i.e., Cambridge, Cambridge Defendants, the Officers—violated her right to equal protection. Setting this deficiency aside, Arucan's "class-of-one" Equal Protection claim (raised for the first time on appeal) still lacks plausibility. To state a violation of equal protection based on a "class-of-one" theory, a plaintiff must allege "that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *See Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (internal quotation marks and citation omitted). Assuming the claim is aimed toward Cambridge Defendants, Arucan's claim fails because Cambridge Defendants are not state actors. *See Paterek v. Vill. of Armada,* 801 F.3d 630, 649 (6th Cir. 2015) ("The Equal Protection Clause safeguards against the disparate treatment of similarly situated individuals as a result of government action . . . ."). Likewise, Arucan does not state a plausible claim against the Officers because she has not alleged that they witnessed someone else commit a crime but declined to effectuate an arrest. Thus, Arucan's supposed Equal Protection claim lacks plausibility and was properly dismissed.[6]

**AFFIRMED.**

---

[6] Arucan requests that we remand her case so that she can amend her pleadings. That request is denied because Arucan did not request such relief in the district court. *See Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993).